*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 45**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
*Plaintiff and Appellee,*

*v.*

LORAINE SUNDQUIST,
*Defendant and Appellant.*

No. 20110575
Filed July 23, 2013

Third District, West Jordan
Honorable Bruce C. Lubeck
No. 110408730

Attorneys:

Maria-Nicholle Beringer, Robert H. Scott, Chandler P. Thompson,
Salt Lake City, for appellee

J. Kent Holland, Daniel J. Morse, Sandy, Douglas R. Short,
Midvale, for appellant

Jerrold S. Jensen, Wade Farraway, Salt Lake City, amicus curiae
for State of Utah

JUSTICE PARRISH authored the opinion of the Court,
in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
and JUDGE ORME joined.

Having recused himself, ASSOCIATE CHIEF JUSTICE NEHRING
does not participate herein;
COURT OF APPEALS JUDGE GREGORY K. ORME sat.

JUSTICE LEE filed a concurring opinion.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1    Appellant Loraine Sundquist appeals from an interlocutory order requiring her to vacate her home during the pendency of an unlawful detainer action. Appellee Federal National Mortgage Association (FNMA) initiated the unlawful detainer action, claiming ownership of Sundquist's home. FNMA claimed ownership pursuant to a trustee's deed that it obtained from ReconTrust.

ReconTrust is a national bank that conducted a nonjudicial foreclosure sale in its capacity as trustee of the trust deed that Sundquist had executed to secure her mortgage.

¶2 The interlocutory order at issue was entered at the conclusion of an immediate occupancy hearing held just two weeks after FNMA initiated the unlawful detainer action. At that hearing, Sundquist argued that ReconTrust lacked authority to conduct the foreclosure sale and convey her home to FNMA. Specifically, she argued that sections 57-1-21 and 57-1-23 of the Utah Code limit the power of sale to trustees who are either members of the Utah State Bar or title insurance companies with an office in Utah. In response, FNMA argued that ReconTrust, as a national bank, was authorized to conduct the sale under federal law and that federal law preempted the Utah statute. The district court agreed with FNMA and entered an order of restitution, requiring that Sundquist vacate her home.

¶3 We reverse. Utah Code sections 57-1-21 and 57-1-23 are not preempted by federal law. A national bank seeking to foreclose real property in Utah must comply with Utah law. We therefore vacate the district court's order of restitution and remand for additional proceedings.

¶4 Because our ruling in this matter is limited to the preemption issue, the parties may, on remand, raise any additional issues they may see fit with respect to FNMA's claim for immediate occupancy.[1] Similarly, the parties remain free to raise any additional arguments they may have regarding the validity of the trustee's deed in connection with the final resolution of the unlawful detainer action.

## FACTUAL & PROCEDURAL BACKGROUND

¶5 In 2006, Sundquist executed a deed of trust as security for the loan on her Utah home (Property). In 2009, Sundquist defaulted on the loan. The beneficiary under the deed of trust appointed ReconTrust, a wholly-owned subsidiary of Bank of America, as the

---

[1] FNMA has raised at least some additional arguments for the first time on appeal. However, because the district court agreed with FNMA on the preemption issue, FNMA did not need to raise these arguments in the district court and the district court did not rule on them. We decline to address them for the first time on appeal.

successor trustee.  In January 2011, ReconTrust placed a notice of trustee's sale on Sundquist's door.  In May 2011, ReconTrust conducted a nonjudicial foreclosure of Sundquist's home and thereafter deeded it to FNMA.

¶6    In June 2011, FNMA filed an unlawful detainer action. Pursuant to Utah Code section 78B-6-810, the district court conducted an evidentiary hearing to determine which party would have possession of the Property during the pendency of the litigation.  At the hearing, Sundquist argued that Utah law regarding the qualification of trustees did not authorize ReconTrust to conduct a nonjudicial foreclosure.  In response, FNMA asserted that Utah law was preempted by federal law, which authorized ReconTrust to conduct the foreclosure sale.  The district court sided with FNMA and awarded it possession of the Property during the pendency of the litigation.

¶7    Sundquist filed a petition for interlocutory appeal, which was granted.  The order of restitution was stayed pending appeal. We have jurisdiction under Utah Code section 78A-3-102(3).

¶8    Sundquist argues that ReconTrust lacked authority to conduct a nonjudicial foreclosure of her home because such authority is granted only to members of the Utah State Bar or title insurance companies with an office in Utah.  UTAH CODE §§ 57-1-21; 57-1-23.  She asserts that it necessarily follows that ReconTrust's deed is "null and void," that FNMA lacks title to the Property, and that FNMA is without standing to bring an unlawful detainer action. She concludes that the district court lacked subject matter jurisdiction to entertain the eviction action brought by FNMA.

¶9    FNMA counters that ReconTrust is a national bank exercising fiduciary powers subject to section 92a of the National Banking Act (NBA), which preempts Utah law regarding qualification of trustees.  UTAH CODE §§ 57-1-21, 57-1-23; 12 U.S.C. § 92a.  Specifically, FNMA claims that ReconTrust is subject to the laws of Texas because that is where ReconTrust is "located" and where it conducts its fiduciary business, and that ReconTrust is authorized to conduct nonjudicial foreclosures under Texas law. FNMA also argues that the order of restitution was proper because Sundquist suffered no prejudice by virtue of ReconTrust's role as a trustee inasmuch as she was unable to demonstrate an ability to make up her missed mortgage payments or post a bond.  FNMA further argues that the other issues raised by Sundquist are not ripe for appeal inasmuch as the district court has yet to determine

whether Sundquist's challenge to ReconTrust's authority has any effect on the validity of the trust deed.

## STANDARD OF REVIEW

¶10   We generally will not disturb a district court's order of restitution unless it abuses its discretion. *State v. Snyder*, 747 P.2d 417, 422 (Utah 1987).  However, when the validity of an order of restitution turns on interpretation of a statue, it presents issues of law. *State v. Garcia*, 866 P.2d 5, 6 (Utah Ct. App. 1993).  "We accord a lower court's statutory interpretations no particular deference but assess them for correctness, as we do any other conclusion of law." *State v. Rio Vista Oil, Ltd.*, 786 P.2d 1343, 1347 (Utah 1990).

## ANALYSIS

### I.  SECTION 92a OF THE NATIONAL BANKING ACT DOES NOT PREEMPT SECTIONS 57-1-21 AND 57-1-23 OF THE UTAH CODE AND A NATIONAL BANK SEEKING TO FORECLOSE REAL PROPERTY IN UTAH MUST THEREFORE COMPLY WITH UTAH LAW

¶11   Sundquist appeals the order of restitution directing her to vacate the Property during the pendency of the unlawful detainer action.   In an unlawful detainer action, a court may hold an evidentiary hearing under section 78B-6-810(2)(b)(i) of the Utah Code to "determine who has the right of occupancy during the litigation's pendency."  The district court held such a hearing in this case.[2]  At this hearing, Sundquist argued that ReconTrust was not qualified to conduct the foreclosure because Utah law establishing the qualifications of trustees is not preempted by the NBA.  The district court rejected this argument and ordered Sundquist to vacate the Property.

¶12   Under section 57-1-23 of the Utah Code, a qualified trustee "is given the power of sale by which the trustee may . . . cause the trust property to be sold."  Section 57-1-21(1)(a) defines qualified trustee as:

---

[2] It is unclear from the record if either party actually requested this hearing.  Under the statute, however, it is clear that such a hearing should be scheduled only "upon request of either party." UTAH CODE § 78B-6-810(2)(a).  We therefore note that district courts should not schedule such hearings unless requested to do so by one of the parties.

> (i) any active member of the Utah State Bar who maintains a place within the state where the trustor or other interested parties may meet with the trustee [or]
> . . .
> (iv) any title insurance company or agency that:
>
> > (A) holds a certificate of authority or license . . . to conduct insurance business in the state;
> >
> > (B) is actually doing business in the state; and
> >
> > (C) maintains a bona fide office in the state.[3]

¶13 ReconTrust is neither a member of the Utah State Bar nor a title insurance company or agency with an office in the State of Utah. ReconTrust was therefore not a qualified trustee with the power of sale under Utah Code sections 57-1-21 and 57-1-23. However, FNMA argues that Utah law does not apply to ReconTrust because, as a national bank, ReconTrust is subject to the laws of Texas, not Utah. Under Texas law, ReconTrust is arguably authorized to conduct a nonjudicial foreclosure sale. *See* Tex. Fin. Code §§ 32.001, 182.001.

¶14 Whether ReconTrust is subject to the laws of Utah or Texas depends on where it is "located." As a national bank, ReconTrust operates under the National Banking Act, 12 U.S.C. § 1 *et seq.*, and is regulated by the Office of the Comptroller of Currency (Comptroller). The NBA gives the Comptroller authority "to grant . . . to national banks . . . the right to act as trustee . . . *under the laws of the State in which the national bank is located*." 12 U.S.C. § 92a(a) (emphasis added). And section 92a(b) of the NBA provides that "exercise of such powers by national banks shall not be deemed to be in contravention of State or local law."

¶15 The Comptroller's current interpretation of section 92a is contained in the Code of Federal Regulations. 12 C.F.R. § 9.7. The applicable regulation provides that a national bank is "located" in "the state in which the bank acts in a fiduciary capacity." 12 C.F.R. § 9.7 (d). And the regulations define the state in which the bank acts in a fiduciary capacity as "the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets." 12 C.F.R. § 9.7(d).

---

[3] This statute survived constitutional challenge in *Kleinsmith v. Shurtleff*, 571 F.3d 1033 (10th Cir. 2009).

¶16 Despite the fact that the Property at issue is located in Utah, FNMA argues that ReconTrust acted in a fiduciary capacity in Texas because the substitution of trustee, notice of default, and trustee's deed all were executed and notarized in Texas. It therefore concludes that the laws of Texas apply and that, under Texas law, ReconTrust has the authority to conduct a nonjudicial foreclosure of property located in Utah.

¶17 The issue of whether the NBA preempts Utah law governing the qualification of trustees has been addressed by the Utah federal district courts, with differing results. In three cases, the federal district courts have found that federal law preempts Utah law and have therefore concluded that the laws of Texas apply. *Garrett v. ReconTrust Co., N.A.,* 2011 WL 7657381, at *2 (D. Utah 2011) (holding that because ReconTrust is located in Texas, it acts as a trustee in Texas, and therefore "the state laws that apply to ReconTrust by virtue of section 92a are those of Texas, rather than Utah."); *Dutcher v. Matheson*, 2012 WL 423379, at *7 (D. Utah 2012) (holding that Texas law governs ReconTrust, and even if it did not, that section 92a of the NBA preempts Utah law because Utah title insurance companies compete with ReconTrust); *Baker v. BAC Home Loans Servicing LP*, 2012 WL 464024, at *4 (D. Utah 2012) (following *Dutcher*).

¶18 In four cases, however, the federal district courts have reached the contrary result and held that Utah law is not preempted. *Cox v. ReconTrust Co., N.A.*, 2011 WL 835893, at *6 (D. Utah 2011) (stating that "[u]nder a straight forward reading of [section] 92a(b), this court must look to Utah law in its analysis of whether ReconTrust's activities in Utah exceed ReconTrust's trustee powers"); *Coleman v. ReconTrust Co., N.A.*, U.S. Dist. LEXIS 138519 (D. Utah 2011) (agreeing with the reasoning applied in *Cox*); *Loomis v. Meridias Capital, Inc.*, 2011 WL 5844304 (D. Utah 2011) (same); *Bell v. Countrywide Bank, N.A.*, 860 F. Supp. 2d 1290 (D. Utah 2012) (same). We find Judge Jenkins' analysis in *Bell* to be particularly persuasive, and follow much of this same analysis here. Like Judge Jenkins, we conclude that ReconTrust is subject to the laws of Utah when exercising the power to sell property located in Utah.

¶19 In arguing that ReconTrust is subject to Texas law, FNMA relies heavily on the regulations interpreting section 92a, which provide that a national bank is located in the state where it accepts its fiduciary appointment, executes the documents creating the fiduciary relationship, and makes discretionary decisions regarding the asset. 12 C.F.R. § 9.7(d). The first question confronting us,

therefore, is the level of deference that we owe to the regulation.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) (footnotes omitted).

¶20   With this standard in mind, our task is clear. We must first examine the language of section 92a of the NBA to see if it unambiguously addresses the question of where a national bank is located. If so, that is the end of the matter. On the other hand, if the statute is ambiguous, we then look to the federal regulations to determine whether the interpretation they adopt is based on a permissible construction of the NBA.

*A. Under the Plain Language of Section 92a, a National Bank Performing Trustee's Duties Must Comply with the Law of the State in Which the Duties Are Performed*

¶21   We now turn to the relevant statutory language to determine if Congress has directly spoken to the issue of where a national bank is "located." *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 873 ("The best evidence of the [L]egislature's intent is the plain language of the statute itself." (internal quotation marks omitted)).

¶22   Under section 92a of the NBA, the Comptroller has authority to authorize national banks to act as a trustee or in a

fiduciary capacity "when not in contravention of [the] State [law] . . . in which the national bank is located," whenever State banks are permitted to act as a trustee under that State's laws. 12 U.S.C. § 92a(a). Utah banks are not permitted to act as a trustee of a trust deed under Utah's laws. And there is nothing in the text of the NBA to suggest that a national bank may appoint a Texas trustee to foreclose on Utah property when a Utah bank could not do so.

¶23 The key inquiry under the statute is determining where a national bank is "located." Locate is a commonly used term. Webster's dictionary defines "locate" as "to determine or indicate the place, site, or limits of" something. "Locate," Merriam-Webster Online Dictionary, 2013, http://www.merriam-webster.com (last visited July 8, 2013). This suggests that a national bank is located in the place or places where it acts or conducts business. As Judge Jenkins correctly reasoned, "[t]he statute's plain meaning indicates that the national bank is 'located' in each state in which it carries on activities as trustee." *Bell*, 860 F. Supp. 2d at 1300.

> When acting as a trustee of a trust deed, one necessarily acts in the capacity as trustee in the State where the real property is located, where notice of default is filed, and where the sale is conducted. In this case, ReconTrust is acting as trustee of a trust deed for real property in the State of Utah. ReconTrust, as trustee, filed notice of default and election to foreclose on real property within the State of Utah.

> The notice is filed in Utah. The sale is conducted in Utah, often on the steps of the local county courthouse. Those *acts* do not occur in Texas. Those *acts* may not be performed by Utah-chartered banks.

*Id.* at 1300–01.

¶24 Judge Waddoups' reasoning in *Cox* was similar. He stated that he was

> unconvinced by ReconTrust's argument that [section] 92a(b) dictates that the court look to some state law other than Utah state law to evaluate ReconTrust's foreclosure activities in Utah. . . . Here, . . . ReconTrust is conducting foreclosure activities on behalf of Bank of America in several states, including Utah. . . .

> Under a straight forward reading of [section] 92a(b), this court must look to Utah law in its analysis

of whether ReconTrust's activities in Utah exceed ReconTrust's trustee powers. The powers granted to ReconTrust under federal law in this case are limited by the powers granted by Utah state law to ReconTrust's competitors. Accordingly, the extent of ReconTrust's federal powers must be determined by reference to the laws of Utah, not by reference to the laws of some other state. Under Utah law, the power to conduct a nonjudicial foreclosure is limited to attorneys and title companies. The scope of the powers granted by federal law is limited to the same power Utah statute confers on ReconTrust's Utah competitors.

*Cox v. ReconTrust Co., N.A.*, 2011 WL 835893, at *6 (D. Utah 2011).

¶25 In short, the plain meaning of the statute is clear. A national bank is located in those places where it acts or conducts business. And it certainly acts as a trustee in the state in which it liquidates trust assets.

¶26 Our conclusion is bolstered by the legislative history of the NBA, specifically the history of section 92a, which limits the Comptroller's authority to grant trustee powers to national banks only when "not in contravention of State or local law." 12 U.S.C. § 92a(a). We again summarize Judge Jenkins' analysis.

¶27 "The phrase, 'when not in contravention of State or local law' originated with [section] 11(k) of the Federal Reserve Act of 1913." *Bell*, 860 F. Supp. 2d at 1301. Section 11(k) of the Federal Reserve Act of 1913 allowed conversion of state banks to national banks "[p]rovided . . . [t]hat said conversion shall not be in contravention of the State law." Federal Reserve Act of 1913, Dec. 23, 1913, ch. 6 § 11(k), 38 Stat. 262. This language was also included in section 8 of the same Act, but was expanded to include local law as well. Discussions in the Senate as to this language stated that it was "put . . . in to show that there was no purpose on the part of Congress to disregard the local State law, but merely to give its assent provided the State law permitted it to be done." 51 Cong. Rec. S879 (December 15, 1913) (statement of Sen. Owen).

¶28 As Judge Jenkins reasoned, taken together, the language of sections 11(k) and 8 is nearly identical to language later included in section 92a(a) of the NBA, which similarly limits the Comptroller's authority to grant trustee powers to national banks only "when not in contravention of State or local law." 12 U.S.C. § 92a(a). Thus,

"[i]n light of the near-identical nature of the phrases in [sections] 8 and 11(k), it seems clear that Congress intended to preclude any inference that a national bank may disregard local State law in performing its duties as trustee."[4] *Bell*, 860 F. Supp. 2d at 1302.

¶29 The plain meaning of the statutory language is therefore consistent with the legislative history. And through the plain language of section 92a, Congress has directly spoken to the question at issue. "[T]he law that shall apply to a national bank acting as trustee under a trust deed is the local State law, which in this instance is Utah law." *Bell*, 860 F. Supp. 2d at 1304.

*B. Because Real Property is Traditionally an Area of State Concern, Utah Law Governs When a National Bank Seeks to Foreclose Property Located in Utah*

¶30 The concurring opinion suggests that section 92a is not clear on its face. However, even if the plain meaning of the statute were not clear, two substantive canons of statutory construction dictate the same result.

¶31 The first is the clear statement canon, which applies where Congress is thought to have legislated in a manner that would "alter the usual constitutional balance between the States and the Federal Government," *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) (internal quotation marks omitted), or "intrude" on a field of traditional state sovereignty, *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991). In such fields, courts do not lightly "attribute to Congress an intent to intrude," but instead require that Congress "make its intention to do so unmistakably clear in the language of the statute." *Id*. at 460, 470 (internal quotation marks omitted).

¶32 When Congress "intends to pre-empt the historic powers of the States or when it legislates in traditionally sensitive areas," *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 543 (2002) (internal quotation marks omitted), a clear statement of intention to do so is required.[5] This clear statement canon "assures that the

---

[4] *See also First Nat'l Bank of Bay City v. Fellows ex rel. Union Trust Co*, 244 U.S. 416, 426 (1917) (holding that under section 11(k) of the Federal Reserve Act of 1913, a state must allow a national bank to conduct the same business as it allows a state bank to conduct).

[5] *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 787 (2000) (relying in part on the clear statement rule to
(continued...)

[L]egislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." *United States v. Bass*, 404 U.S. 336, 349 (1971). It thus reflects "an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." *Gregory*, 501 U.S. at 461.

¶33 A second clear-statement canon is also implicated. It holds that the *Chevron* analysis as to whether Congress has already spoken to the precise question at issue and clearly expressed its intent is informed by a threshold inquiry into whether "a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000). And it recognizes that not all ambiguities can reasonably be seen as a legislative delegation of discretion to an agency. Thus, in *Brown & Williamson*, the Court drew a distinction between "major questions" of policy and mere "interstitial matters" of "daily administration." *Id.* (internal quotation marks omitted). It deemed it highly unlikely that Congress would leave the determination of major policy questions to agency discretion, and thus required a clear statement of congressional intent to do so. *Id.* at 159–60.

---

[5](...continued)

decide that a qui tam relator may not bring an action in federal court against a state under the False Claims Act); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("[W]here federal law is said to bar state action in fields of traditional state regulation . . . we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (internal quotation marks omitted)); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) ("[T]he historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." (all but first alteration in original)); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) (relying on a clear statement rule to decide that states are not "persons" within the meaning of a section 1983 claim); *United States v. Bass*, 404 U.S. 336, 349 (1971) ("[W]e will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction.").

¶34 In *Brown & Williamson*, the lack of a clear statement persuaded the Court that Congress had not intended to delegate to the FDA the discretion to decide whether to regulate tobacco. *Id*. Because such authority was so politically and economically significant, the Court was "confident that Congress could not have intended to delegate" such a decision "to an agency" in a less-than-clear, "cryptic … fashion." *Id*. at 160. A parallel conclusion was adopted in *MCI Telecommunications Corp. v. American Telephone & Telegraph Co.*, 512 U.S. 218 (1994). There the Court held that the statutory delegation of agency authority to "modify" common carrier tariff requirements did not encompass the authority to make fundamental changes in the nature of waiving the tariff requirement altogether. *Id*. at 225. It rooted its holding in a parallel clear-statement canon, deeming it "highly unlikely that Congress would leave the determination of whether an industry will be . . . rate-regulated to agency discretion—and even more unlikely that it would achieve that through such a subtle device as permission to 'modify' rate-filing requirements." *Id*. at 231.

¶35 The lack of a clear statement on matters of fundamental significance persuaded the Court in *Brown & Williamson* and *MCI* to repudiate any inference of delegation of agency authority: Absent a clear, non-cryptic indication of congressional intent to leave these questions up to agency discretion, the Court construed the governing statutes to foreclose it.

¶36 These clear-statement rules would inform our construction of section 92a of the NBA were we to find it ambiguous. Under ReconTrust's view, this provision delegates to the Comptroller the discretion to authorize one state to regulate the terms and conditions of a foreclosure sale in another state. But such delegation would intrude on core matters of traditional state sovereignty.[6] "It is

---

[6] *See Santa Fe Indus. v. Green*, 430 U.S. 462, 479 (1977) (stating that "state law will govern" fiduciary obligations). Though only real property law is implicated in this case, the power to act in a fiduciary capacity impacts contract and probate law as well, which are also traditional areas of state concern. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 174 (1982) (Rehnquist, C.J., dissenting) ("Contract and real property law are traditionally the domain of state law."); *Zschernig v. Miller*, 389 U.S. 429, 440 (1968) ("The several States, of course, have traditionally regulated the

(continued...)

beyond question that . . . the general welfare of society is involved in the security of the titles to real estate and the power to ensure that security inheres in the very nature of [state] government." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994) (third alteration in original) (internal quotation marks omitted).

¶37 A delegation of authority to intrude on matters of such intensely local concern may not simply be inferred. Rather, a clear statement of an intent to permit the laws of a foreign state to regulate the manner and mode of a foreclosure sale in another state should be required.

¶38 *Brown & Williamson* and *MCI* dictate a similar conclusion. The matter of authorizing one state to regulate non-judicial sales for the foreclosure of real property in another state would be monumental—hardly the sort of interstitial administrative detail that Congress would likely leave for an agency. Any inference of an intent to leave that to the Comptroller would accordingly require a clear statement of such intent.

*C. The Comptroller's Interpretation of Section 92a is Unreasonable and Not Entitled to Deference*

¶39 Although consideration of the regulation interpreting section 92a is unnecessary because the statutory language is not ambiguous and because Congress did not intend to delegate to the Comptroller the power to preempt the historic power of the states to regulate the foreclosure of real property, we think it worth noting that we find the Comptroller's current interpretation of the statute, which is found in the Code of Federal Regulations, to be unreasonable. Again, we quote from Judge Jenkins. "[E]ven if the statute is not clear and demands interpretation," the "interpretation in 12 C.F.R. [section] 9.7(d) modifies the statute and is unreasonable—if not irrational—and therefore does not deserve deference." *Bell*, 860 F. Supp. 2d at 1298.

¶40 Under *Chevron*, we give deference to an agency's interpretation of a statute only so long as such an interpretation is neither contrary to Congressional intent, nor unreasonable. 467 U.S.

---

⁶(...continued)
descent and distribution of estates."). Accordingly, if we interpreted section 92a as abrogating state law, it would nullify a large swath of Utah law on matters related to national banks acting in a fiduciary capacity, not just the law of real property.

837, 842–43 (1984); *see also LPI Serv. v. McGee*, 2009 UT 41, ¶ 7, 215 P.3d 135 (stating that "where the [L]egislature has granted discretion to an agency to interpret the statutory provision at issue, we will affirm the agency's interpretation if it is reasonable.").

¶41 As Judge Jenkins astutely reasoned, "[i]f [section] 92a is to mean what it says (i.e., the plain meaning), the reference to 'State or local law' at a minimum should be construed to mean the State in which the trust activity occurs." *Bell*, 860 F. Supp. 2d at 1304. And as discussed above, the State in which the trust activity occurred in this case is Utah.

¶42 Despite the straightforward statutory language, the federal regulation setting forth the Comptroller's interpretation of the statute inexplicably defines a bank's "location" as the place where it engages in three specific activities: where it "accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets." 12 C.F.R. § 9.7(d). But there is nothing in the statute itself that ascribes any particular significance of these three particular acts, while rendering other acts undertaken to the bank irrelevant. Moreover, the three activities identified in the regulation could theoretically be performed in any location without regard to the location of the trust property, thereby allowing national banks to dictate the applicable law. Notably missing from this list is where the bank engages "in an act which liquidates the trust assets, e.g., engaging in a nonjudicial foreclosure of real property where the trust asset is located." *Bell*, 860 F. Supp. 2d at 1300. We therefore conclude that the regulation is not a reasonable construction of the statute.

¶43 While the current regulation is not reasonable, the Comptroller's former interpretation of the statute, found in Interpretive Letter Number 695, 1996 WL 187825 (December 8, 1995), is reasonable. This interpretation states that

> the effect of section 92a is that in any specific state, the availability of fiduciary powers is the same for out-of-state national banks or for in-state national banks and is dependent upon what the state permits for its own state institutions. A state may limit national banks from exercising any or all fiduciary powers in that state, but only if it also bars its own institutions from exercising the same powers. Therefore, a national bank with its main office in one state . . . may conduct

fiduciary business in that state and other states, depending upon—with respect to each state—whether each state allows its own institutions to engage in fiduciary business.

*Id.* at **4.

¶44 While this interpretation is consistent with the statutory text, the two interpretive letters that subsequently followed reversed Interpretive Letter Number 695 and actually contradict the plain meaning and legislative history of section 92a's contravention clause. Like the current federal regulation, Interpretive Letter Number 866, 1999 WL 983923 (October 8, 1999), and Interpretive Letter 872, 1999 WL 1251391 (October 28, 1999), state that a bank's location is to be determined by where the bank acts in a fiduciary capacity. *See e.g.* 1999 WL 983923 at Part II.B. And like the current regulation, the letters state that a bank acts in a fiduciary capacity only where it reviews proposed trust appointments, executes trust agreements, and makes discretionary decisions about the investment or distribution of trust assets. *See id.* at Part II.C.

¶45 Like Judge Jenkins, we conclude that Congressional intent is clear from the statutory text. Congress intended "that a national bank based in Texas which performs fiduciary functions in Utah cannot have a competitive advantage over a Utah-based national bank that performs its fiduciary functions in Utah." *Bell*, 860 F. Supp. 2d at 1305. "[T]he national statutes which created a dual banking system operate to deny out-of-state national banks any competitive advantage over local, state-chartered banks or in-state national banks." *Id.* at 1308. However, the interpretation in section 9.7(d) would not just level the playing field as Congress intended. Rather, it would mean that "a national bank based in Texas . . . [would] have a competitive advantage over a national bank based in Utah as well as Utah-chartered banks." *Id.* at 1305.

¶46 In short, the regulation's interpretation is not entitled to deference because it

modifies the statute and gives out-of-state national banks a sizeable competitive advantage over their state-chartered counterparts and in-state national banks in states—such as Utah—where state-chartered banks and in-state national banks are not allowed to perform certain fiduciary functions, namely exercising the power of sale in nonjudicial trust deed foreclosures.

*Id.* at 1308.

### D. Utah Law is Not Preempted by the NBA Because a National Bank Does Not Compete With Any Utah Institution Authorized to Foreclose Under Utah Law

¶47   We now turn to FNMA's alternative argument.  FNMA asserts that even if ReconTrust exercised its fiduciary duties in Utah, Utah law is nevertheless preempted by section 92a(b)'s "competition clause."  The Competition Clause provides that

> whenever the laws of [a] State authorize or permit the exercise of [trustee] powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law.

12 U.S.C. § 92a(b).

¶48   FNMA asserts that ReconTrust competes with Utah title insurance companies and reasons that Utah law is therefore preempted.  We are unpersuaded.  As a national bank, ReconTrust competes with Utah banks.  It is not subject to competition from either members of the Utah State bar or Utah title insurance companies.  And under sections 57-1-21 and 57-1-23 of the Utah Code, even State banks "must procure the services of either an active member of the State bar or title insurance company in order to comply with the Utah law." *Bell*, 860 F. Supp. 2d at 1309.

¶49   As a national bank operating in Utah under the NBA, ReconTrust is precluded from exercising the power of a trustee under Utah statute for purposes of conducting a nonjudicial foreclosure.  It would be irrational to interpret section 92a(b) or section 9.7 as giving a national bank such as ReconTrust authority to exercise a power that Utah law specifically prohibits even Utah banks from exercising.  We therefore hold that sections 57-1-21 and 57-1-23 of the Utah Code are not preempted by the NBA.  A national bank seeking to foreclose on real property in Utah must comply with Utah law.

### II.  WE DECLINE TO REACH THE OTHER ISSUES RAISED BY THE PARTIES

¶50   Our opinion in this matter is limited to the narrow issue of whether Utah law regarding the qualification of trustees is preempted by the NBA.  In briefing and oral argument, the parties have attempted to raise a variety of other issues relating to the

validity of the nonjudicial foreclosure sale, the validity of the trustee's deed, and the propriety of the order of restitution. Because these issues were not fully litigated below, we decline to reach them on interlocutory appeal. On remand, the parties are free to raise any arguments they may have regarding the validity of the foreclosure sale and trustee's deed and the appropriateness of the order of restitution.

**CONCLUSION**

¶51 The district court erred in concluding that Utah Code sections 57-1-21 and 57-1-23 are preempted by the NBA. A national bank operating in Utah is authorized to act only to the extent Utah law allows Utah banks to do so. As Judge Jenkins stated in *Bell v. Countrywide Bank, N.A.*, "[a] state bank which seeks to foreclose on real property in Utah must comply with Utah law. A federally chartered 'bank' which seeks to foreclose on such property must comply with Utah law as well." 860 F. Supp. 2d 1290, 1297 (D. Utah 2012). We remand this matter to the district court for consideration of other arguments or defenses the parties may properly raise.

---

JUSTICE LEE, concurring in part and concurring in the judgment:

¶ 52 I am on board with the majority's disposition of this case and with its conclusion that section 92a of the National Bank Act forecloses application of the Comptroller's regulation in 12 C.F.R. § 9.7. Specifically, I agree that a national bank physically located in one state (Texas) but performing a nonjudicial foreclosure sale in another (Utah) is governed by the law of the latter state, not the former. And I agree that that conclusion flows from a construction of section 92a under *Chevron* step one—in that the "laws of the State in which the national bank is located," 12 U.S.C. § 92a(a), must have reference to the state in which the foreclosure sale is performed, and not the state in which the bank is physically located.

¶ 53 I would base that conclusion on only one of the two grounds articulated by the court, however. In my view, the statutory reference to the "laws of the State in which the national bank is located" is not at all clear or unambiguous on its face. So I cannot concur in part I.A of the court's opinion, which rests on that conclusion.

¶ 54 Section 92a allows the Comptroller of the Currency to grant a national bank, "when not in contravention of State or local law, the right to act . . . in any . . . fiduciary capacity in which" entities "which come into competition with national banks are permitted to act

under the laws of the State in which the national bank is located." 12 U.S.C. § 92a(a). If entities competing with national banks are permitted to perform fiduciary acts "under the laws of the State in which the national bank is located," then national banks may likewise be authorized to perform such acts.

¶ 55 This case turns on the meaning of the term "located." If ReconTrust is located in Texas by virtue of the physical situs of its offices there, then Texas law dictates the terms and conditions of its authority to act as a fiduciary in conducting a nonjudicial sale for the foreclosure of real property in Utah. On the other hand, if ReconTrust is located in Utah based on the situs of the real property subject to foreclosure, then it is Utah law that governs its authority in this regard.

¶ 56 I see no clear or unambiguous answer to this question on the face of the National Bank Act. As the United States Supreme Court has indicated, the term "located" "as it appears in the National Bank Act, has no fixed, plain meaning. *See Wachovia Bank v. Schmidt*, 546 U.S. 304 (2006). "In some provisions, the word unquestionably refers to a single place: the site of the banking association's designated main office. In other provisions, 'located' apparently refers to or includes branch offices." *Id.* at 313 (citations omitted).

¶ 57 Loraine Sundquist proffers another possible meaning of the term—one divorced from physical location. She suggests that a bank performing a fiduciary act is "located" in the state in which the bank performs the act at issue. That seems grammatically tenable. In circumstances where a bank is physically officed in one or more states and conducting business in another, any or all of those states are plausibly the place where it is "located." The dictionary definitions of the intransitive form of the verb "locate," after all, have reference to the place where one "establish[es] one's business or residence in a place," or where one "settle[s]." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, 1129 (2d ed. 1987). Such definitions beg the key question, which is what sorts of actions are sufficient to rise to the level of establishing a "business," or of "settling." Without more, I would say that either a physical office or the performance of a fiduciary act on behalf of another could suffice. And thus I cannot say, as the majority does, that the statutory language, standing alone, is clear.

¶ 58 The court bases its contrary conclusion on an alternative definition of "locate"—"'to determine or indicate the place, site or limits of' something." *Supra* ¶ 23 (quoting Merriam-Webster Online

Dictionary). Even assuming a definition of the transitive form of "locate" to be relevant, this one is similarly question-begging. It could certainly be said "that a national bank is located in the place or places where it acts or conducts business," *supra* ¶ 23, but that does not at all eliminate the alternative conclusion that a bank could also be located in the place or site where its physical offices are situated. The key question under the majority's definition, in other words, is *what* "determines" or "indicates" the place of a person or entity's location. And that question is not at all answered—certainly not clearly or unambiguously—by the statutory text.

¶ 59 Nor is the question resolved in the legislative history cited by the majority. It may be that the addition of "local" to the phrase "not in contravention of State or local law" in an unrelated section of the NBA was meant "to preclude any inference that a national bank may disregard local State law." *See supra* ¶ 28 (internal quotation marks omitted). But given that "located" takes on different meanings throughout the NBA, s*ee Wachovia*, 546 U.S. at 313–14, it is by no means clear that legislative history concerning the use of the term in one section has any relevance to its use in another. And again, the cited legislative history does not answer the key question: Local to what? To the bank's physical location, or to the fiduciary acts it performs?

¶ 60 Thus, I see no basis for the conclusion that section 92a clearly mandates any particular notion of "located" among the range of definitions that seem linguistically possible under the statute. I would instead acknowledge that the statute, on its face, is susceptible to a range of constructions—encompassing both physical locations and the state(s) where a bank conducts its fiduciary acts.

¶ 61 That ambiguity, however, cuts in favor of the construction rendered by the court. It does so under the clear statement rules identified by the majority. I accordingly concur in part I.B of the court's opinion, and would rest the construction of section 92a on the clear statement principle articulated there—that on a matter of traditional state sovereignty over the disposition of title to property of an inherently local nature, we cannot lightly deem Congress to have intruded on the local state's sovereignty.