LUCERO, Circuit Judge,
concurring.
I agree with my colleagues in the majority that the district court properly decided it had jurisdiction under the Class Action Fairness Act. And I reluctantly concur with my colleagues on the merits, solely on the basis of waiver. I write separately to express my view that 12 C.F.R. § 9.7(d) should not be entitled to deference. '
By statute, national banks may act as trustees in the same manner that state banks “are permitted to act under the laws of the State in which the national bank is located.” 12 U.S.C. § 92a(a). The Office of the Comptroller of the Currency (“OCC”) has concluded that a national bank is located in “the state in which -the bank acts in a fiduciary, capacity” as to each of its fiduciary relationships. § 9.7(d). In this case, Re-conTrust Company, N.A. (“Recon”), a national bank, acted in a fiduciary capacity in Utah by engaging in a non-judicial foreclosure in the state. Therefore, Recon should have been subject to Utah law regarding such foreclosures. But the OCC has unreasonably concluded that a national bank “acts in a fiduciary capacity” only “in the state in which it accepts the fiduciary appointment, executes the documents that *1204 create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets.” Id. Because Recon conducted these three activities in .Texas, the regulation permits it to transpose Texas law for Utah law with respect to a foreclosure sale in Utah and thereby obtain a material competitive advantage over Utah state banks. Such a serious degradation of state sovereignty ought not to be the result of a patently unreasonable regulatory decision.
I
As the majority opinion correctly notes, the plaintiffs properly' preserved only a single argument regarding § 92a(a): the plain language of the statute compels the conclusion that Recon was “located” in Utah when it engaged in the non-judicial foreclosures at issue. (Majority Op. 1201 n.9.) But the Supreme Court has previously described the word “located” as a “chameleon” whose “meaning depends on the context in and purpose for which it is used.” Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 318, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006); see also Garrett v. ReconTrust Co., N.A., 546 Fed.Appx. 736, 738-39 (10th Cir. 2013) (unpublished) (rejecting argument that the plain text of § 92a(a) .is clear). I will not repeat here the majority’s thorough consideration of the plain text. (Majority Op. 1201-03.) I simply note my agreement that § 92a(a) does not tell us the.state in which Recon was located.
II
Although I concur with the majority that the plaintiffs’ plain text contention fails, the arguments the plaintiffs attempt to raise for the first time on appeal carry some force. The OCC defines a bank’s location as the state in which it “acts in a fiduciary capacity.” § 9.7(d). This portion of the regulation is well-founded. Section 92a itself gives the OCC authority to grant national banks the power to “act as trustee.” § 92a(a). And the essence of acting as a trustee is acting in a fiduciary capacity. But the OCC has limited the locations in which a bank “acts in a fiduciary capacity” to only, three: where the bank “accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets.” § 9.7(d). I would hold that this limitation is unreasonable, joining at least two courts that have declined to grant § 9.7(d) deference. See Bell v. Countrywide Bank, N.A., 860 F.Supp.2d 1290, 1298-1308 (D. Utah 2012); Fed. Nat’l Mortg. Ass’n v. Sundquist, 311 P.3d 1004, 1009-13 (Utah 2013).
Nothing in the statute compels the OCC’s conclusion that a bank’s location is so limited. See Sundquist, 311 P.3d at 1013 (“[T]here is nothing in the statute itself that ascribes any particular significance of these three particular acts, while rendering other acts undertaken by the bank irrelevant.”). In drafting § 9.7(d), the OCC apparently attempted to identify “key fiduciary functions.” Fiduciary Activities of National Banks, 65 Fed. Reg. 75,872, 75,874 (Dec. 5, 2000). Yet the agency “failed to include as a core fiduciary function engaging in an act which liquidates the trust assets, e.g., engaging in a non-judicial foreclosure of real property where the trust asset is located. This makes no sense.” Bell, 860 F.Supp.2d at 1300.
In promulgating § 9.7(d), the OCC likely had in mind traditional express trusts rather than trust deeds. But the “similarities between a trustee of an express trust and a trustee under a deed of trust end with the name.” Monterey S. P. P’ship v. W. L. Bangham, 49 Cal.3d 454, 261 Cal. Rptr. 587, 777 P.2d 623, 628 (1989). In the deed of trust context, a non-judicial foreclosure sale is not an ancillary act; it is the core responsibility undertaken by the trus *1205 tee. See Russell v. Lundberg, 120 P.3d 541, 545 (Utah Ct. App. 2005) (“A trustee’s primary obligation is to assure the payment of the debt secured by the trust deed.”). Whether because of an oversight or confusion regarding the differences between express trusts and trust deeds, the OCC’s decision to omit non-judicial foreclosures from its list of a trustee’s key fiduciary duties cannot be countenanced. It seems nonsensical to exclude from this list a trustee’s liquidation of trust assets—a trustee’s principal duty under a deed of trust.
In addition to arbitrarily limiting the circumstances in which a national bank will be deemed to have acted in a fiduciary capacity, the OCC’s interpretation suffers from two other shortcomings. First, the interpretation cuts against a central policy of the statute: ensuring competitive equality between state and national banks. A national bank can choose to perform at least some of the listed activities from any location. See § 9.7(d) (listing the state in which a bank accepts its appointment and executes trust documents). And the regulation provides that if the listed activities “take place in more than one state, then the state in which the bank acts in a fiduciary capacity for section 92a purposes is the state that the bank designates from among those states.” Id This regulation permits national banks to “dictate the applicable law.” Sundquist, 311 P.3d at 1013. Put another way, the OCC’s regulation creates a race to the bottom in which national banks can choose to be governed by the state with the most bank-friendly rules simply by assuming the delineated fiduciary responsibilities there. National banks can then act according to those rules in every state.
By allowing national banks to select which state’s law it will follow regardless of the state in which it acts, § 9.7(d) -grants them a material competitive advantage over state banks, which may not so choose. This result undermines the principle of “competitive equality” that Congress “firmly embedded in the statutes governing the national banking -system.” First Nat’l Bank in Plant City v. Dickinson, 396 U.S. 122, 133, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969); see also St. Louis Cty. Nat’l Bank v. Mercantile Tr. Co. Nat’l Ass’n, 548 F.2d 716, 720 (8th Cir. 1976) (“The policy of competitive equality was incorporated into section 92a.”); Blaney v. Fla. Nat’l Bank at Orlando, 357 F.2d 27, 30 (5th Cir. 1966) (“[N]ational banks [should be] on an equal competitive basis with state banks and trust companies in the state where the national barik is situated.”); Bell, 860 F.Supp.2d at 1303 (analyzing the legislative history of § 92a(a) and concluding that “Congress thus intended to create an equal playing field for national banks”). Section 9.7(d) contravenes the statute’s overriding purpose. It grants Recon, a national bank based in Texas, a substantial competitive advantage over Utah-chartered banks, as well as national banks based in Utah. Under Utah law, the latter two types of banks cannot exercise the power of sale in non-judicial foreclosures in Utah, whereas an out-of-state national bank like Recon can, This consequence turns the principle of competitive equity on its head.[1]
*1206 The OCC’s regulation should also not be granted deference because it intrudes into a realm of traditional state authority. As the Utah Supreme Court explained, in Sundquist, courts should not lightly assume a congressional purpose to dominate “a field of traditional state sovereignty.” 311 P.3d at 1010. Because “the security of the titles to real estate and the power to ensure that security inheres in the very nature of state government,” we should require “a clear statement of an intent to permit the laws of a foreign state to regulate the manner and mode of a foreclosure sale in another state.” Id. at 1012 (quotation and alteration omitted).[2]
I would not construe the ambiguity in the term “located” as a delegation of authority to a federal agency to decide that Texas law applies to Utah foreclosures. The legislative history of the statute counsels strongly against such a conclusion. In a Senate. Report accompanying the National Banking Act of 1962, the Senate Committee on Banking and Currency stated that “this bill will result in no change in the present distribution of power between Federal and State Governments.” Bell, 860 F.Supp.2d at 1303 (quoting S. Rep. No. 87-2039 (1962), as reprinted in 1962 U.S.C.C.A.N. 2736). Yet § 9.7(d) greatly upsets states’ traditional authority over real property located within their borders.
Ill
Unfortunately, the plaintiffs in this case have waived any arguments regarding Chevron or the interpretive canons noted above.[3] (See Majority Op. 1204-05.) In the absence of such a waiver, however, I would hold for the above reasons that § 9.7(d) is an unreasonable interpretation of § 92a(a) and thus unworthy of deference. Under a more logical construction of the statute, the applicable law would be that of the state where a trustee exercises its power *1207 of sale. As the court in Bell explained, “[w]hen acting as a trustee of a trust deed, one necessarily acts in the capacity as a trustee in the State where the real property. is located, where notice of default is filed, and where the sale is conducted.” 860 F.Supp.2d at 1300, And because Utah law grants the authority to conduct non-judicial foreclpsures only to members of the Utah State Bar or title insurance companies with an office in Utah,- Utah- Code § 57-1-21(3), I would conclude that Recon does not have the power to conduct nonjudicial foreclosures of trust deeds in Utah.

. Although the current regulation is unreasonable, the OCC has previously set forth a permissible interpretation of § 92a(a). The OCC previously advised that
the effect of section 92a is that in any specific state, the availability of fiduciary powers is the same for out-of-state national banks or for in-state national banks and is dependent upon what the state permits for its own state institutions.... Therefore, a national bank with its main office in one state ... may conduct fiduciary business in that state and other states, depending upon—with respect to each state—whether each state allows its own institutions to engage in fiduciary business.
*1206 Office of the Comptroller of the Currency, Authority of a National Bank to Conduct Fiduciary Activities Nationwide Through Trust Offices in Various States, Interpretive Letter No, 695, 1996 WL 187.825, at *4 (Dec. 8, 1995) (emphasis added). This reading of the statute provided a “level playing field” between state-chartered banks, in-state national banks, arid out-of-state national banks. Id. at *14. Two later interpretative letters from the OCC, however, reversed this position. See Fiduciary Activities of National Banks, 66 Fed. Reg. 34,792, 34,795 (July 2, 2001) (describing interpretive letters rejecting the prior view).

. Some have taken this argument one step further, asserting that "when an agency purports to decide the scope of federal pre-emption, a healthy respect for state sovereignty calls for something less than Chevron deference.” Watters v. Wachovia Bank, N.A., 550 U.S. 1, 41, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007) (Stevens, J., dissenting). "Unlike Congress, administrative agencies are clearly not ‘ designed to represent the interests of States, yet with relative ease they can promulgate comprehensive and detailed regulations that have broad pre-emption ramifications for state law.” Geier v. Am. Honda Motor Co., 529 U.S. 861, 908, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (Stevens, J., dissenting).

. I admit to some confusion as to precisely where in the Chevron framework the foregoing analysis fits. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S, 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), Certain of my colleagues have noted that the Supreme Court has been inconsistent in describing "just how rigorous Chevron step one is supposed to be.” Gutierrez-Brizuela v. Lynch, 834 F.3d 1142, 1157 (10th Cir.2016) (Gorsuch, J., concurring). Our circuit precedent indicates that "courts may use statutory language and legislative history at the first step of the Chevron analysis.” Ron Peterson Firearms, LLC v. Jones, 760 F.3d 1147, 1157 n.10 (10th Cir. 2014). But this instruction seems to stand in some tension with the rule that "we do not resort to legislative history to cloud a statutory text that is clear.” Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). Regardless of whether the foregoing is properly considered a Chevron step one or step two argument, it was not preserved below.