HOLMES, Circuit Judge,
concurring.
I write separately to offer some clarifying remarks regarding the not infrequent use of the term “preemption” (or derivatives thereof) in the context of 12 U.S.C. § 92a(a). Specifically, I hope to underscore that—insofar as one can rightly call § 92a(a)’s effect on state law “preemption”—it is not ordinary conflict preemption.
Rooting this conceptual observation in the soil of this case, I observe that the defendants in their briefing occasionally suggest that this dispute involves a question of conflict preemption. See Aplees.’ Br. at 30 n.12 (“This case pertains to preemption of that portion of the Utah statute which conflicts with § 92a.”); id. at 28 (contending that the plaintiffs’ argument that Utah law applies in the present circumstances is “fundamentally flawed because ReeoñTrust, a national bank, was authorized to conduct the sales by federal law, and any Utah law purporting to deny that authority must give way”). However, though there is arguably a limited and unique form of preemption at issue here, it is not typical conflict preemption. The doctrine of conflict preemption is well-established: “In that species of preemption, a state-law provision will be preempted if it conflicts with federal law.” United States v. Sup. Ct. of N.M., 839 F.3d 888, 918, 2016 WL 5946021, at *22 (10th Cir. June 7, 2016); see Richard H. Fallon, Jr., et al., Hart and Wechsler’s the Federal Courts and the Federal System 646 (6th ed. 2009) (“Conflict preemption .,. embraces two distinct situations. In the easier but far rarer case, compliance with both federal and state duties is simply impossible. In the second and more common situation, compliance with both laws is possible, yet state law poses an obstacle to the achievement of federal purposes.” (citation omitted)).
As the plaintiffs recognize, however, this case does not involve “typical” conflict preemption, Aplts.’ Reply Br. at 3, where federal law—especially in the context of national banks—entirely supplants and renders inoperative conflicting state-law provisions. See Barnett Bank of Marion Cty., N.A. v. Nelson, 517 U.S. 25, 32, 116 S.Ct 1103, 134 L.Ed.2d 237 (1996) (stating that the “history is one of interpreting grants of both enumerated and incidental ‘powers’ to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law”); id. at 33, 116 S.Ct. 1103 (“In defining the pre-emptive scope of statutes and regulations granting a power to national banks, these cases take the view that normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted.”); see also Hughes v. Talen Energy Mktg., LLC, — U.S. -, 136 S.Ct. 1288, 1297, 194 L.Ed.2d 414 (2016) (“Put simply, federal law preempts contrary state law,”). In other words, the inquiry in the classic conflict-preemption scenario focuses on whether federal law conflicts with state law such that the force of the latter is nullified; if so, purely federal law will control the contested terrain. That is not so in this setting pertaining to the fiduciary powers of national banks. *1208 More specifically, a role for state law is expressly built into the federal regulatory scheme: that is, the federal banking provision at issue, § 92a(a), explicitly provides that “the exercise of [federal banking] power is subject to state law.” Barnett Bank, 517 U.S. at 34, 116 S.Ct. 1103. Consequently, state law is never entirely out of the equation in this setting. The bone of contention between the parties simply relates to the identification of which state’s law—as between the two competing states, Utah and Texas—conditions the exercise of the federal banking power that § 92a(a) confers.
Yet, it could be argued that the outcome of this state-law competition does give rise, in a very limited sense, to a unique form of preemption, in that the law of a state—the loser in the competition—is displaced through force of federal law and rendered null. Of course, because state law is built into the federal scheme, the law of the loser state in the competition is replaced by the law of another state (i.e., the winner). So, it is not classic conflict preemption, as discussed above. However, the term “preemption” (as well as derivatives thereof) has been used in this very limited sense by some courts in describing the effect of § 92a(a) on the (losing) state’s law. See Bell v. Countrywide Bank, N.A., 860 F.Supp.2d 1290, 1302 (D. Utah 2012) (“A contrary interpretation [of allegedly relevant legislative history of § 92a] ... effectively preempts the laws of the local State (presumably the State where the foreclosed property is located and the trustee executes the power of sale) in favor of the laws of another State (the State where the national bank performs its ‘core fiduciary functions’).... ” (emphases added)); Fed. Nat’l Mortg. Ass’n v. Sundquist, 311 P.3d 1004, 1008 (Utah 2013) (“The issue of whether the NBA preempts Utah law governing the qualification of trustees has been addressed by the Utah federal district courts, with differing results. In three cases, the federal district courts have found that federal law preempts Utah law and have therefore concluded that the laws of Texas apply.” (emphasis added)); id. at 1007 (“Section 92a of the National Banking Act Does Not Preempt Sections 57-1-21 and 57-1-23 of the Utah Code — ” (capitalization altered)); see also Dutcher I, 733 F.3d at 986 (observing that “the district court held that federal law preempted state law”). The parties likewise have primarily used the term “preempts” or “preemption” in this narrow sense: viz., they use the term relative to the inquiry into whether Utah law is displaced by Texas law through the force of federal law— namely, by § 92a(a). Not surprisingly, the parties adopt opposite views on this unique preemption question. Compare Aplees.’ Br. at 2 (framing the issue as “Did the District Court correctly hold that 12 U.S.C. § 92a(a) authorizes ReconTrust, a national bank, [under Texas law] to exercise the power of sale in Utah and preempts those provisions of a Utah statute which purport to deny ReconTrust that authority?”), and 49 (resolving the issue by noting that “Texas law does not prohibit ReconTrust from exercising the power of sale in Utah,” and thus “ReconTrust’s exercise of the power of sale with respect to Plaintiffs’ properties was pex-missible under federal law” (underlining omitted and emphasis added)), with Aplts.’ Reply Br. at 3 (“Ap-pellees have it exactly backward: § 92a expressly allows Utah law to limit the fiduciary powers of national banks as long as it applies the same limits to state institutions.” (emphasis added)); id. at 2 (“Where does Utah law conflict with federal law and what federal law preempts Utah’s nonjudicial foreclosure regime? Ap-pellees gloss over this issue.”); see also Aplts.’ Opening Br. at 38 (“Appellees moved for dismissal based on preemption. But there is no federal law that supplants Utah’s non-judicial foreclosure law.”). For *1209 clarity’s sake, however, it is worth highlighting that at issue in the parties’ arguments is not typical conflict preemption.