**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 2, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICHARD DUTCHER; GWEN
DUTCHER; RICHARD FERGUSON;
MICHELLE FERGUSON;
CATHERINE RICHARDS AHLERS,
on their own behalf and on behalf of a
class of similarly situated persons,

      Plaintiffs-Appellants,

v.

STUART T. MATHESON;
MATHESON, MORTENSEN, OLSEN
& JEPPSON, P.C.; RECONTRUST
COMPANY, N.A.; B.A.C. HOME
LOANS SERVICING, LP; BANK OF
AMERICA, N.A.,

      Defendants-Appellees.

------------------------------

STATE OF UTAH,

      Amicus Curiae.

No. 14-4085

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:11-CV-00666-TS)**

---

Marcus R. Mumford, Mumford PC, Salt Lake City, Utah, for Plaintiffs-
Appellants.

Amy Miller, McGuireWoods LLP, Washington, D.C., (Brian Emory Pumphrey,

McGuire Woods LLP, Richmond, Virginia, and Craig Robert Mariger, Jones Waldo Holbrook & McDonough, PC, Salt Lake City, Utah, with her on the brief) for Defendants-Appellees.

Thom D. Roberts, Assistant Utah Attorney General (Sean D. Reyes, Attorney General, with him on the brief), Salt Lake City, Utah, for Amicus Curiae.

---

Before **LUCERO**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

Richard and Gwen Dutcher and their co-plaintiffs (collectively, "the plaintiffs") brought suit in Utah state court on behalf of a putative plaintiff class against ReconTrust, a national bank that serves as the substitute trustee for class members' deeds of trust over properties located in Utah. The suit alleges that ReconTrust illegally non-judicially foreclosed on the plaintiffs' properties because depository institutions like ReconTrust do not have the power of sale over properties secured by trust deed. The plaintiffs also sued B.A.C. Home Loans Servicing ("BAC") and Bank of America, N.A. ("BOA"), as the former trustees who transferred trusteeship to ReconTrust, as well as Stuart Matheson and his law firm, as the agents who conducted the foreclosure sale on behalf of ReconTrust. ReconTrust and the other defendants (collectively, "the defendants") removed the case to federal court. They maintained that ReconTrust's acts were lawful. The district court denied a motion by the plaintiffs to remand the case to

2

state court and agreed with ReconTrust on the merits, which led the court to grant the defendants' pending motion to dismiss.

The plaintiffs ask us to reverse the court's order denying remand and to reverse the order granting dismissal of the case. We conclude, however, that the district court properly decided that it had jurisdiction under the Class Action Fairness Act ("CAFA"); accordingly, it correctly denied the plaintiffs' motion for remand. On the merits, we conclude that ReconTrust was authorized to conduct the challenged foreclosures under federal law, and the plaintiffs have relatedly failed to state a claim on which relief could be granted. We therefore affirm the district court's judgment as to both issues.

## I

The plaintiffs are representatives of a putative class of former purchasers of Utah properties who financed their purchases by executing deeds of trust with various banks. In Utah, which permits the financing of the purchase of real estate through deeds of trust, the purchaser of the real estate becomes the trustor of a deed of trust under which the purchased property is the trust property and the financier is the beneficiary of the trust. If the purchaser defaults, the beneficiary may commence non-judicial foreclosure of the secured property. This is usually accomplished by selecting a substitute trustee to conduct the foreclosure.

In this case, the plaintiffs defaulted and were subject to non-judicial

3

foreclosures instituted by BOA and its subsidiaries, including ReconTrust.[1]

ReconTrust—a wholly owned subsidiary of BOA that maintains offices in

Richardson, Texas—is a national bank by right of its charter with the Office of

the Comptroller of the Currency ("OCC"). Pursuant to this charter, ReconTrust's

functions are limited to foreclosing on deeds of trust. To that end, defendants

BAC and BOA designated ReconTrust as the substitute trustee for the plaintiffs'

---

[1]     In their complaint, the plaintiffs indicate that ReconTrust is BOA's wholly owned subsidiary. However, in their required corporate disclosure statement, *see* Fed. R. App. P. 26.1, the defendants represent that ReconTrust is actually a wholly owned subsidiary of Bank of America Corporation ("BOACorp"), and that BOA is itself a wholly owned subsidiary of BOACorp. Whether ReconTrust is in fact, as alleged in the complaint, a wholly owned subsidiary of BOA (which is supposedly BOACorp's wholly owned subsidiary) or just a wholly owned subsidiary of BOACorp itself, is immaterial for our purposes in deciding the issues presented in this appeal. Under the circumstances of this case, we see no reason to deviate from the factual averments of the plaintiffs' complaint and the contents of documents that we may properly consider in this procedural setting. *See, e.g.*, *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1023 (10th Cir. 2012) (looking to the well-pleaded averments of plaintiff's complaint in determining subject-matter jurisdiction); *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005) ("We have recognized however, that a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."); *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) ("A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."); *see also* Charles Alan Wright, et al., 5B FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. database updated Apr. 2016) ("Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.").

properties, and ReconTrust proceeded to conduct the foreclosures that the plaintiffs now assert were unlawful. In doing so, ReconTrust notarized and executed—from Texas—three documents pertaining to each foreclosed property: a Substitution of Trustee, a Notice of Default and Election to Sell, and the Trustee's Deed. In each case, ReconTrust—acting through its agent Stuart Matheson, who is a member of the Utah Bar, and his law firm of Matheson, Mortensen, Olsen & Jeppson, P.C. ("MMOJ")—commenced non-judicial foreclosure proceedings on the property on the same day that it became the designated substitute trustee.

The plaintiffs filed this putative class action in Utah state court against Mr. Matheson, MMOJ, BAC, ReconTrust, and BOA, claiming that the defendants had conducted illegal non-judicial foreclosures in violation of Utah Law. The complaint presented six claims for relief: (1) violations of Utah Code § 57-1-23.5 (providing damages for the unauthorized sale of property held in deed of trust); (2) violations of Utah Code § 57-1-21 (relating to the exercise of the power of sale on deeds of trust without authority); (3) conversion; (4) wrongful lien; (5) wrongful foreclosure; and (6) intentional infliction of emotional distress.

The plaintiffs defined the class to contain "[a]ll persons subjected to the actions of Matheson, MMOJ and other defendants in non-judicial foreclosure proceedings instituted by ReconTrust, BAC, or Bank of America, as the purported trustee" since January 1, 2001. Aplts.' App. at 25 (Compl., filed June 24, 2011). The defendants removed the action to federal court under the Class Action

5

Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and diversity jurisdiction. They then filed a motion to dismiss, arguing that ReconTrust, as a federally-chartered national bank, was permitted to conduct the challenged foreclosures under federal law—specifically, 12 U.S.C. § 92a(a), as interpreted by the OCC in 12 C.F.R. § 9.7. The plaintiffs argued that this federal statute did not in fact permit ReconTrust to conduct the challenged foreclosures; they also moved to remand the case to state court. The district court granted the defendants' motion and denied that of the plaintiffs, dismissing all of the plaintiffs' claims and closing the case.

Following these rulings, another judge in the District of Utah issued an order ruling on the same question at issue here—whether ReconTrust was permitted to conduct non-judicial foreclosures in Utah under 12 U.S.C. § 92a(a)—and found that the challenged foreclosures were not lawful. *See Bell v. Countrywide Bank, N.A.*, 860 F. Supp. 2d 1290 (D. Utah 2012). Relying on this decision, and arguing for the first time that the OCC's regulatory interpretation of § 92a—embodied in 12 C.F.R. § 9.7—was "invalid under *Chevron*," the plaintiffs filed a Motion For Reconsideration, Or, In The Alternative, To Alter Or Amend Judgment. Aplts.' App. at 245 (Mem. Decision & Order Den. All Pending Mots., filed July 23, 2012); *see Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). The district court denied the motion. It declined to consider the plaintiffs' late-blooming *Chevron* argument and concluded that they

6

had not shown that "the court ha[d] misapprehended the facts, a party's position, or the controlling law." *Id.* at 244.

The plaintiffs then appealed to our court. We asked for and received an amicus brief from the OCC, which administers 12 U.S.C. § 92a, on the applicability of 12 C.F.R. § 9.7 to this fact situation. *See Dutcher v. Matheson (Dutcher I)*, 733 F.3d 980, 984 (10th Cir. 2013). We also requested and received supplemental briefing by the parties on the question of jurisdiction. *Id.* at 985. Following oral argument, we issued an opinion that concluded that "the district court erred in determining it had jurisdiction to hear this case" under federal question or diversity jurisdiction, but remanded the case "with instructions for the district court to determine whether it has jurisdiction to act and, relatedly, to rule in the first instance whether [CAFA] provides jurisdiction." *Id.* at 983, 990. Because we concluded that the district court had erred in finding that it had jurisdiction, we did not address the merits of the dispute. *Id.* at 983.

On remand, the district court denied the plaintiffs' requests for jurisdictional discovery, concluded based on additional briefing that it did have jurisdiction under CAFA, and again closed the case. The plaintiffs filed a new motion to alter or amend the judgment, claiming that the district court disobeyed our court's mandate by closing the case without reconsidering the merits issues anew, and again asked for a *Chevron* analysis of § 9.7. The district court rejected the motion but clarified that it was re-adopting its previous dismissal ruling. The

plaintiffs now appeal to our court.

## II

This case presents two principal issues for our review.[2]  First, we must determine whether the district court correctly concluded that it had jurisdiction under CAFA.  We conclude that it did, and we therefore proceed to consider the merits.  On the merits, we uphold the district court's ruling that ReconTrust was permitted to conduct the challenged foreclosures under federal law.  We thus affirm as to both issues.

### A

We begin, as we must, by considering the propriety of the district court's

---

[2]  The plaintiffs also allege that the district court erred—subsequent to the *Dutcher I* remand and its resolution of the CAFA jurisdictional issue—by refusing to revisit its merits rulings and, instead, closing the case.  We need not spill much ink on this claim.  In addressing this matter, the district court reasoned that our "focus was on jurisdiction" in *Dutcher I* and that our directions circumscribing the court's actions on remand were "limited to" that issue, and therefore, the court was not obliged to "readdress the merits of Plaintiffs' claims." Aplts.' App. at 366 (Mem. Decision & Order on Pending Mots., dated July 3, 2014).  In our view, the district court's interpretation of our mandate in *Dutcher I* was patently sound.  *Compare Dutcher I*, 733 F.3d at 982 (noting that the court's "focus is upon a more fundamental question" of subject-matter jurisdiction, rather than the "significant questions regarding the interaction of federal banking and state foreclosure laws" that "this case presents"), *with id.* at 990 ("We REMAND with instructions for the district court to determine whether it has jurisdiction to act and, relatedly, to rule in the first instance whether [CAFA] provides jurisdiction.").  And the court did not abuse its discretion in declining to re-visit its prior merits rulings.  *See, e.g.*, *United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011) ("[T]he scope of the mandate on remand in the Tenth Circuit is carved out by exclusion: unless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard."); *accord Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014).

exercise of subject-matter jurisdiction over this case. "Federal courts are courts of limited jurisdiction" and "must have a statutory basis for their jurisdiction." *Dutcher I*, 733 F.3d at 984 (quoting *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1274 (10th Cir. 2012)). We must "presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction" that jurisdiction exists; that showing must be made by a preponderance of the evidence. *Id.* at 985 (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999)). "We review de novo whether the district court had jurisdiction to act." *Id.*

The plaintiffs challenge the district court's denial of their motion to remand the case to state court. We first note that we have authority to address the denial of a motion to remand as part of our review of the final judgment of the district court under 28 U.S.C. § 1291. *See Reece v. AES Corp.*, 638 F. App'x 755, 763–67 (10th Cir. 2016). In *Reece*, which we deem persuasive here, a panel of our court (in an unpublished decision) reasoned that although 28 U.S.C. § 1453(c)(1) provides for only a ten-day window in which a party may file an interlocutory appeal from an order granting or denying a motion to remand a class action to state court, this provision does not prevent us from reviewing the denial of such a motion as part of our review of the court's final judgment. *Id.* at 764. The panel further noted that a number of "[o]ther circuit courts, and panels thereof, have identified no jurisdictional defect in the review after final judgment

9

of denials of motions to remand in CAFA cases." *Id.* at 765 (citing *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352 (6th Cir. 2015); *Hoffman v. Nutraceutical Corp.*, 563 F. App'x 183, 184–85 & n.2 (3d Cir. 2014); *Lemy v. Direct Gen. Fin. Co.*, 559 F. App'x 796, 798 (11th Cir. 2014) (per curiam); *Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 930–34 (8th Cir. 2013); *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789–90 (8th Cir. 2012); *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 624–26 (2d Cir. 2012); *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010)). Adopting the analysis laid out in *Reece*, we are satisfied that we may properly review the propriety of the district court's denial of the plaintiffs' motion to remand at this stage of the litigation.

The defendants argue that the district court had jurisdiction under CAFA. Under CAFA, a federal district court has subject matter jurisdiction "over class actions involving [1] at least 100 members and [2] over $5 million in controversy when [3] minimal diversity is met (between at least one defendant and one plaintiff-class member)." *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009) (per curiam). The defendants allege that those three elements are met, and the plaintiffs have not argued otherwise in their briefs to this court or before the district court. Instead, the plaintiffs argue that at least one of three CAFA exceptions applies here. Because the defendants have effectively established that the CAFA elements are met, the burden shifts to the plaintiffs to

10

show that jurisdiction is improper because one of CAFA's jurisdictional exceptions is applicable. *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014). The three exceptions to CAFA jurisdiction claimed by the plaintiffs are the local controversy exception, 28 U.S.C. § 1332(d)(4)(A); the home state exception, 28 U.S.C. § 1332(d)(4)(B); and the discretionary exception, 28 U.S.C. § 1332(d)(3). We evaluate each in turn and conclude that the plaintiffs have not met their burden of showing that any of the three applies in this case. We therefore affirm the district court's denial of the plaintiffs' motion to remand.

**i**

The plaintiffs first argue that the "local controversy" exception, as defined in 28 U.S.C. § 1332(d)(4)(A), required that the district court grant their motion to remand. Rather than divesting a court of jurisdiction, the local controversy exception "operates as an abstention doctrine." *See Graphics Commc'ns Local 1B Health & Welfare Fund v. CVS Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011). The local controversy provision "is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole" and "all doubts [are] resolved 'in favor of exercising jurisdiction over the case.'" *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163–64 (11th Cir. 2006) (quoting S. Rep. No. 109–14, at *42 (2005)); *see also Woods*, 771 F.3d at 1262 ("[CAFA]'s provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."

11

(quoting S. Rep. No. 109–14, at *43 (2005))). Nevertheless, remand is mandatory if the plaintiffs can show that they meet the requirements of the local controversy exception. *See* 28 U.S.C. § 1332(d)(4) ("A district court *shall decline* to exercise jurisdiction . . . ." (emphasis added)); *Coffey*, 581 F.3d at 1243 ("A district court must decline to exercise jurisdiction if the plaintiffs can satisfy the requirements for this exception . . . .").

The local controversy exception provides that a federal court "shall decline" jurisdiction where: (1) more than two-thirds of the class members are citizens of the state where the action is filed; (2) plaintiffs seek "significant relief" from at least one local defendant who is a citizen of the state and whose alleged conduct forms a "significant basis" for the claims asserted; (3) the "principal injuries" were incurred in the state; and (4) no other class action "has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons" in the three years prior. 28 U.S.C. § 1332(d)(4)(A). All four prongs must be satisfied. The defendants argue that the plaintiffs cannot meet the first, second, and fourth prongs. Because we agree that the plaintiffs cannot meet the fourth prong, we do not address the defendants' other arguments.[3]

---

[3] The district court concluded that the local controversy exception did not apply because it found that the plaintiffs had failed to meet three of the four necessary requirements for the local controversy exception. Because we are at liberty to "affirm on any basis supported by the record," *Jordan v. U.S. Dep't of*

(continued...)

12

The fourth prong states that there can be no other class action filed asserting similar factual allegations against any of the defendants in the three years prior to the filing of this case. The defendants urge that our focus should be on "whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of action were asserted." S. Rep. No. 109–14 at *41; *accord Rasberry v. Capitol Cty. Mut. Fire Ins. Co.*, 609 F. Supp. 2d 594, 604–05 (E.D. Tex. 2009) (quoting same).

The district court found that the case of *Coleman v. ReconTrust Co.*, No. 2:10-CV-1099, 2012 WL 1302567 (D. Utah Apr. 16, 2012), filed approximately eight months before this action, was the type of class action that prevented the plaintiffs from making the requisite showing on the fourth prong. We agree: the *Coleman* complaint not only raises similar factual allegations, but also asserts the same basis of wrongdoing—*viz.*, that ReconTrust exercised the power of sale on deeds of trust in Utah without being authorized to do so under Utah law. The *Coleman* complaint alleged that plaintiffs have been "foreclosed upon and some times [sic] dispossessed from their homes by defendants acting through an entity, ReconTrust, which lacks authority to foreclose non-judicially because it lacks the power of sale under Utah law." Aplees.' Supp. App. at 27–28 (Compl., *Coleman*

_____

[3](...continued)
*Justice*, 668 F.3d 1188, 1200 (10th Cir. 2011), we address only the fourth prong of the local controversy exception and determine that this ground is sufficient to affirm the district court without addressing the remainder of the court's analysis.

13

*v. ReconTrust Co.*, No. 2:10-CV-1099 (D. Utah, filed Nov. 5, 2010)). Similarly, the *Dutcher* complaint here states that plaintiffs have been "foreclosed upon and in most instances dispossessed from their homes by Defendants acting through or on behalf of ReconTrust, which lacks authority to foreclose non-judicially because it lacks the power of sale under Utah statutory law." Aplts.' App. at 25–26.

Likewise, both complaints allege wrongful foreclosures based on ReconTrust's lack of authority under Utah law. The *Coleman* complaint alleges that defendants "with knowledge that such proceedings were beyond the authority of defendant ReconTrust, chose to initiate and carry out non-judicial foreclosures." Aplees.' Supp. App. at 32. Likewise, the *Dutcher* complaint alleges that defendants "have conducted wrongful non-judicial foreclosures . . . knowing that Defendants were not authorized by Utah law to initiate or conduct such foreclosure sales." Aplts.' App. at 34. We are struck by the similarity of the factual allegations between the two complaints, which allege, in nearly identical language, the same acts of wrongdoing by the same defendant.

Nevertheless, the plaintiffs attempt to distinguish *Coleman* in two ways. First, they argue that *Coleman* was primarily a case about violations of the Fair Debt Collection Practices Act and the Utah Pattern of Unlawful Activity Act, while the present case is about the violation of state statutes governing the power of sale on deeds of trust. However, differences in the causes of action pleaded are

14

not enough to distinguish cases under the demands of CAFA: the local controversy exception looks exclusively to whether the other case has asserted "the same or similar *factual allegations*," 28 U.S.C. § 1332(d)(4)(A)(ii) (emphasis added), not the same or similar causes of action. Nevertheless, the plaintiffs urge us to follow the approach of *Rasberry*. In *Rasberry*, the Eastern District of Texas held that one class action complaining of a county's "failure to pay *contractor overhead and profit*" and seeking "*money damages*" did not operate to bar another class action against the same county complaining of the "use of *unlicensed adjusters*" and seeking "*declaratory and injunctive* relief." *Rasberry*, 609 F. Supp. 2d at 605. The court found that even though the cases "ar[o]se from a common event," namely the county's response to Hurricane Rita, "the factual basis giving rise to both actions differ[ed] dramatically," and "[t]he proof necessary to prevail" in one class action "differ[ed] in all crucial respects from the proof necessary to prevail" in the other. *Id.*

Even if we were to adopt *Rasberry*'s reasoning, however, it would not work to benefit the plaintiffs. Unlike the actions at issue in *Rasberry*, the causes of action in *Coleman* and the causes of action at issue in this case fundamentally rely on demonstrating the same facts: *viz.*, that ReconTrust foreclosed on Utah properties held in deed of trust without holding the power of sale. The plaintiffs attempt to distinguish *Coleman* by claiming that the plaintiffs in that case were required to show "(1) the 'initiation of foreclosure to coerce payment of the debt';

15

(2) 'threats to take action that cannot legally be taken'; (3) 'false representations that documents filed are legal process'; [and] (4) 'threatening and taking nonjudicial action to effect dispossession.'" Aplts.' Opening Br. at 27 (quoting Aplts.' App. at 290–91 (Pls.' Supp. Br. on Jurisdiction) (summarizing the *Coleman* complaint)).  In order to make all of the foregoing showings the *Coleman* plaintiffs had to establish that ReconTrust lacked the power to non-judicially foreclose on Utah properties held in deed of trust; that is precisely the matter at issue here.  Thus we cannot say, as the *Rasberry* court could, that the proof necessary "differs in *all* crucial respects" between the two cases.  *Rasberry*, 609 F. Supp. 2d at 605 (emphasis added).  In at least one crucial respect, the need to demonstrate absence of authority to foreclose, both cases required identical factual showings.[4]

As a second defense, the plaintiffs argue that *Coleman* was not a class action, despite the case being filed as a putative class action, because the district court ultimately denied class certification.  Thus, they argue, there was no true prior class action to preempt their suit under the local controversy exception.

[4]     Nor are we persuaded by the plaintiffs' claim that the unlawful practices alleged in *Coleman* "do not include violations of Utah Code Ann. §§ 57-1-21 or -23, the gravamen of Appellants' Complaint."  Aplts.' Reply Br. at 23; *accord* Aplts.' Opening Br. at 28.  A brief review of the *Coleman* complaint shows that the plaintiffs *did* allege violations of Utah Code Ann. § 57-1-21 and made those violations the basis of its claim that ReconTrust illegally foreclosed on the plaintiffs' houses.  *See* Aplees.' Supp. App. at 27–28 (stating that "ReconTrust . . . lacks authority to foreclose non-judicially because it lacks the power of sale under Utah law ([Utah Code] §57-1-21(3)").

16

There is no dispute that the plaintiffs in *Coleman* attempted to bring a class action: the complaint was filed under the heading "**CLASS ACTION**," Aplees.' Supp. App. at 22, and was brought "on behalf of Plaintiffs and others similarly situated" while defining two proposed classes of plaintiffs, *id.* at 26–27. Nevertheless, the plaintiffs argue that when the district court refused to certify the class, it had a retroactive effect such that *Coleman* was never a class action from its inception. This apparently novel interpretation accords with neither the text nor the rationale underlying the no-prior-class-action provision of CAFA.

The text of the local controversy exception states that it applies only when "no other class action has been *filed*" within the three year period. 28 U.S.C. § 1332(d)(4)(A)(ii) (emphasis added). The statute does not address whether any class action was certified over that time frame, and we do not agree with the plaintiffs that a court's eventual denial of class certification works retroactively to negate the fact that a case was actually *filed* as a class action. *Cf. Levine v. Entrust Grp., Inc.*, No. C 12–03959 WHA, 2013 WL 1120695, at \*4 (N.D. Cal. Mar. 18, 2013) (holding that a prior class action would still defeat this exception because it was "filed," even though plaintiffs voluntarily dismissed the suit soon thereafter). Because the statute speaks of a case "filed" as a class action, we think the relevant temporal point to determine whether a case is a class action is when the complaint seeking class-wide relief is filed, rather than when the court makes a decision regarding class certification. *Cf. Puerto Rico v. Franklin Cal.*

17

*Tax-Free Trust*, --- U.S. ----, 136 S. Ct. 1938, 1946 (2016) (questions of statutory interpretation "begin[] 'with the language of the statute itself,' and that 'is also where the inquiry should end,' [where] 'the statute's language is plain.'" (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989))).

Moreover, the rationale underlying the no-prior-class-action provision of the CAFA exception confirms our understanding of the statute's terms—*viz.*, that the statute refers to cases filed as class actions, rather than exclusively to those that are later certified as class actions. The legislative history evinces one especially salient observation regarding the provision: the *filing* of multiple actions is a strong signal that the cases do not truly constitute "primarily local, *intrastate* matters," which state courts have a substantial interest in adjudicating. *Coffey*, 581 F.3d at 1243; *see* S. Rep. No. 109–14 at \*40–41. For that reason, we are convinced that CAFA meant what it said when it referenced cases that are "filed" as class actions.

Accordingly, we agree with the district court that *Coleman* was a class action that raised similar factual claims as the present case; therefore, the court's denial of remand under the local controversy exception was proper.

**ii**

Nor are the plaintiffs entitled to a remand to state court under the "home state" exception. CAFA provides that courts "shall decline" jurisdiction where (1) more than two-thirds of the members are citizens of the state where the action

18

is filed, and (2) "the primary defendants[] are citizens of the State where the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Like the local controversy exception, the home state exception requires remand if the plaintiffs can meet all of the statutory requirements. *See id.* (stating that the court "*shall* decline to exercise jurisdiction" where the all of the requirements are met (emphasis added)). Unfortunately for the plaintiffs, they cannot show that the "primary defendants" are citizens of Utah.

In determining the applicability of the home state exception, we must decide the following dispute between the parties: Must the plaintiffs requesting remand show that *all* of the primary defendants are citizens of the state, or is it sufficient for them to show that *any* primary defendant is a citizen of the state? Unsurprisingly, the defendants urge the former view—*viz.*, they argue that the plaintiffs cannot make the necessary showing because all of the primary defendants are not Utah citizens; specifically, ReconTrust, BAC, and BOA are not. The plaintiffs argue for the latter view, asserting that they have satisfied this criterion because Mr. Matheson and his law firm, MMOJ, are Utah citizens.

We recently had the opportunity to address a very similar question in *Woods v. Standard Insurance Co.* In that case, we were required to determine whether the "state action" exception—which excludes CAFA jurisdiction when "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief"—required

19

a showing that *all* primary defendants were governmental entities, or merely a showing that *any* primary defendant was such an entity. *Woods*, 771 F.3d at 1263 (quoting 28 U.S.C. § 1332(d)(5)). We held that the phrase "the primary defendants" required plaintiffs requesting remand to show that *all* of the primary defendants were governmental entities. *Id.* Our opinion succinctly summarized our reasoning, which was grounded in the text of the exception itself: "The use of the definite article, 'the,' before the plural noun, 'primary defendants,' and the use of the plural verb, 'are,' leaves no doubt that Congress intended the state action provision to preclude CAFA jurisdiction only when *all of the primary defendants* are states, state officials, or state entities." *Id.* (emphasis added); *accord Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 545 (5th Cir. 2006) (holding that the state action exception requires all primary defendants to be states, state officials, or state entities).

In our view, the reasoning of *Woods* applies with full force to the home state exception. Like the state action exception, the home state exception uses "the definite article, 'the,' before the plural noun, 'primary defendants,' and the . . . plural verb, 'are.'" *Woods*, 771 F.3d at 1263; *see* 28 U.S.C. § 1332(d)(4)(B) (permitting remand when "*the* primary defendants[] *are* citizens of the State where the action was originally filed" (emphases added)). We see no reason to distinguish *Woods*, and the plaintiffs do not suggest one. Accordingly, we conclude that the phrase "the primary defendants[] are" requires that all

20

primary defendants be citizens of Utah in order for the case to qualify for remand. Because the plaintiffs do not contest that some primary defendants are not Utah citizens, we conclude that the case cannot be remanded under the home state exception.

### iii

Finally, the plaintiffs urge us to hold that CAFA's discretionary exception applies. This exception allows a federal court to decline to exercise jurisdiction over a class action that is otherwise covered by CAFA based on six enumerated factors. *See* 28 U.S.C. § 1332(d)(3). However, to qualify for consideration of these factors, the plaintiffs must first establish two prerequisites: "[1] greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and [2] the primary defendants are citizens of the State in which the action was originally filed." *Id.*; *see also Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 811 (5th Cir. 2007) ("The movants must satisfy the citizenship requirement as a prerequisite to the district court weighing the additional statutory factors enumerated to guide the court's remand determination."). As just discussed, the phrase "the primary defendants are citizens of the State" in the CAFA setting requires a showing that *all* primary defendants are citizens of the relevant state, and the plaintiffs cannot make that showing. Therefore, we may not remand the case under the discretionary exception.

21

**iv**

The plaintiffs also argue that "principles of comity" suggest that we should decline to exercise federal jurisdiction. Aplts.' Opening Br. at 33. They base this argument on *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010), a case in which the Supreme Court said that a federal constitutional challenge to a state tax exemption should proceed in state court to permit the state to rule on its own tax administration scheme. *See Levin*, 560 U.S. at 417, 421. The Court specifically noted that *Levin* invoked "the comity doctrine *applicable in state taxation cases* [which] restrains federal courts from entertaining claims for relief that *risk disrupting state tax administration*." *Id.* at 417 (emphases added). This case does not present similar concerns: it presents litigation against multiple parties from multiple states and implicates the federal banking regulatory regime. There is presented here neither a state tax administrative scheme nor a risk to Utah's ability to collect taxation. We conclude that the comity doctrine is inapplicable.

In addition, the plaintiffs argue that this case should be in state court because Utah's supreme court has already ruled on the merits question before us, but "[i]t is beyond cavil that we are not bound by a state court interpretation of federal law." *Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007) (quoting *Grantham v. Avondale Indus., Inc.*, 964 F.2d 471, 473 (5th Cir. 1992)). Acordingly, we do not perceive the foregoing reasons to be sufficient to deprive the federal courts of jurisdiction.

22

In their final argument addressed to jurisdictional concerns, the plaintiffs argue that the district court abused its discretion when, on remand, it ruled on the CAFA jurisdictional question without first granting the plaintiffs' request for jurisdictional discovery.  We review a denial of jurisdictional discovery for an abuse of discretion, asking whether the court's denial prejudiced a litigant because "pertinent facts bearing on the question of jurisdiction are controverted . . . or . . . a more satisfactory showing of the facts is necessary." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (first omission in original) (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).  It is not enough for the plaintiffs to show that denial of discovery deprived them of discovering some fact; they must show that they were prejudiced by the absence of that fact.  *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189–90 (10th Cir. 2010).  The burden is on the party that sought jurisdictional discovery to demonstrate that it was prejudiced by the denial.  *Id.* at 1189 n.11.

In their request for "limited jurisdictional discovery," the plaintiffs sought: (1) to demonstrate the "role as primary defendants in this case" of the Matheson and MMOJ defendants, and (2) "to establish that Plaintiffs have exceeded the one-third or two-thirds threshold of Utah citizens as class members for purposes of applying the Local Controversy, Home State and discretionary exceptions to

23

CAFA." Aplts.' App. at 298–99. The plaintiffs have not shown how the failure to develop either fact has prejudiced them in the ultimate determination of jurisdiction, and we likewise cannot discern any prejudice.

Even assuming that discovery had shed significant light on these areas, we still could not divine a basis to remand the case under the CAFA exceptions at issue: indeed, our analysis above assumed that Mr. Matheson and MMOJ were primary defendants and did not address the citizenship of members of the putative plaintiff class. Instead, we rejected the local controversy exception requirement because of a prior class action raising substantially similar factual issues, and we rejected the home state and discretionary exceptions because it was undisputed that not all primary defendants are Utah citizens. Jurisdictional discovery would have been futile because the development of facts regarding the two identified areas would not have changed our jurisdictional analysis. Therefore, the district court did not abuse its discretion in denying the plaintiffs' jurisdictional discovery request.

**B**

Assured that our jurisdiction over this case is proper, we now review the merits of the district court's grant of the defendants' motion to dismiss. "We review the district court's dismissal under Rule 12(b)(6) de novo," and, in doing so, "we review for plausibility, specifically whether enough facts have been pled to state a plausible claim." *United States ex rel. Lemmon v. Envirocare of Utah,*

24

*Inc.*, 614 F.3d 1163, 1167 (10th Cir. 2010). In its order granting the defendants' motion, the district court noted that each of the causes of action that the plaintiffs assert is based on the claim "that Recon[Trust] did not have authority to conduct a trustee sale because it was not an authorized trustee under Utah law." Aplts.' App. at 137 (Mem. Decision & Order on Pending Mots., dated Feb. 8, 2012). The court, however, found that ReconTrust did have such authority under federal law—specifically, under 12 U.S.C. § 92a(a), a statutory provision concerning the trust powers of national banks, and 12 C.F.R. § 9.7(d), an OCC regulation interpreting that statutory provision—because federal law dictated that ReconTrust's foreclosure authority was circumscribed by the law of Texas (not Utah) and Texas law authorized national banks like ReconTrust to perform non-judicial foreclosures. This holding thus "dispense[d] of all . . . of [the] [p]laintiffs' claims." *Id.* at 151. The plaintiffs now object to this analysis, but, as explained below, we conclude that all of the plaintiffs' appellate arguments either fail on the merits or are waived. We thus uphold the district court's judgment.

## 1

The parties center their analysis on the same place in determining whether ReconTrust was authorized to conduct trustee sales in Utah: specifically, 12 U.S.C. § 92a(a). Under that statute, the OCC is

> authorized and empowered to grant by special permit to national banks applying therefor, *when not in contravention of State or local law*, the right to act as trustee . . . or in any other fiduciary

25

> capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of *the State in which the national bank is located*.

12 U.S.C. § 92a(a) (emphases added). Thus, ReconTrust—as a national bank—was permitted to act, "when not in contravention of State or local law," as a trustee or "in any other fiduciary capacity" in which certain competing entities "are permitted to act under the laws of the State in which [ReconTrust] is located." *Id.* More specifically, under § 92a(a), a national bank, like ReconTrust, is authorized to act as a trustee, including conducting trustee sales, so long as the grant of authority is "not in contravention of State or local law" of "*the* State in which the national bank is *located*." 12 U.S.C. § 92a(a), (b) (emphases added).

The parties' arguments (albeit for different reasons) proceed on the premise that § 92a(a)'s language envisions that national banks will be "located" in only one state with respect to the non-judicial foreclosures at issue here. And the statute's use of the definite article "the" supports the idea of focusing the inquiry on the identification of one state. *See Colorado v. Sunoco, Inc.*, 337 F.3d 1233, 1241 (10th Cir. 2003) ("If Congress intended to allow multiple actions for separate components of recovery or remedy, it surely would have used the indefinite article 'a' rather than the definite article 'the' to modify the phrases 'removal action' and 'remedial action.'"); *id.* (noting that "use of this definite article suggests there will be but a single 'removal action' and a single 'remedial

26

action' per site"); *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4–5 (D.C. Cir. 2000) ("Indeed, '[i]t is a rule of law well established that the definite article "the" particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of "a" or "an."'" (alteration in original) (quoting *Brooks v. Zabka*, 168 Colo. 265, 450 P.2d 653, 655 (1969) (en banc))); *see also United States v. Figueroa-Labrada*, 780 F.3d 1294, 1305 (10th Cir. 2015) (Phillips, J., dissenting) ("The singular 'the' lends support to an interpretation that 'the sentencing hearing' refers to *one* sentencing hearing—which, because it is the first one, must be the original sentencing hearing."); Aplee.'s Br., Addendum at A-49, A-71 (Amicus Br. of U.S. Solicitor General, Sup. Ct. No. 13-852, *Fed. Nat'l Mortg. Assoc. v. Sundquist*) ("Because Section 92a refers to '*the State* in which the national bank is located' the most natural inference is that the laws of a single State will apply to the management of a particular trust.").

The present dispute turns on the question of *which* state's law does 12 U.S.C. § 92a(a) incorporate—that is, whether it is the law of Utah or Texas. More specifically, the identification of the state where ReconTrust is "located" for purposes of § 92a(a) is the bone of contention. The plaintiffs argue that § 92a(a) requires us to look to Utah law, which would prohibit ReconTrust from conducting the foreclosures at issue; on the other hand, the defendants contend that Texas law, which would permit ReconTrust to conduct the challenged

foreclosures, applies.[5]  Notably, the plaintiffs do not contend that Utah law

independently defines the boundaries of ReconTrust's foreclosure authority, apart

from its alleged incorporation into § 92a(a)'s federal regulatory scheme.[6]  In other

[5]        The parties do not dispute these conclusions regarding the consequences of applying, respectively, Utah and Texas law to ReconTrust's foreclosure activities.  By way of background, ReconTrust was not authorized to conduct the challenged foreclosure sales under Utah law because: though Utah does permit six classes of entities to serve as trustees of real estate trust deeds, including "depository institutions," such as ReconTrust, Utah Code § 57-1-21(1)(a)—of these six categories, only title insurance companies and members of the Utah State Bar are permitted to exercise the "power of sale" as trustee of a trust deed, *id.* at §§ 57-1-21(3), 57-1-23.  ReconTrust is obviously not a member of the Utah State Bar, nor is it a title insurance company; thus it is prohibited by Utah law from foreclosing on a trust deed.  Texas law, however, permits a depository institution to engage in a non-judicial foreclosure.  *See* Tex. Fin. Code Ann. § 32.001 (giving banks the power to "act in a fiduciary capacity . . . as . . . trustee, including a mortgage or indenture trustee"); *id.* at § 182.001 (permitting the organization of a state trust company in Texas and permitting such companies to exercise the power of a trustee); *see also* Tex. Prop. Code Ann. § 51.0001 (defining a "Trustee" as the person authorized to exercise the power of sale); *id.* at § 51.0074 (defining the power of a trustee to exercise the power of sale).

[6]        Indeed, even the two principal decisions on which the plaintiffs rely—decisions that conclude that Utah law marks the metes and bounds of Recontrust's foreclosure authority—center the analysis on § 92a, that is, federal law, and seek to determine whether Utah law may be enforced against ReconTrust *through* (i.e., as a function of) federal law.  *See Bell*, 860 F. Supp. 2d at 1298 ("Congress has spoken directly to this issue: the 'State' referenced in § 92a refers, *inter alia*, to the State where the trust activity occurs—Utah in this case.  The statute is clear."); *id.* at 1299–1300 ("The precise question at issue is this: to which 'State(s)' does 12 U.S.C. § 92a(a) refer?"); *Fed. Nat'l Mortg. Ass'n v. Sundquist*, 311 P.3d 1004, 1007 (Utah 2013) ("Whether ReconTrust is subject to the laws of Utah or Texas depends on where it is 'located.'  As a national bank, ReconTrust operates under the National Banking Act and is regulated by the Office of the Comptroller of Currency (Comptroller)." (citation omitted)); *id.* at 1009 ("[O]ur task is clear.  We must first examine the language of § 92a of the NBA to see if it unambiguously addresses the question of where a national bank

(continued...)

28

words, there is no question here about a critical, foundational point: federal law is controlling. However, the federal banking provision at issue, § 92a(a), expressly envisions that "the exercise of that [federal banking] power is subject to state law." *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 34 (1996). Accordingly, what the parties vigorously dispute is *which* state's law—as between the two competing states, Utah and Texas—helps to define the boundaries of the federal banking power that § 92a(a) confers.

Acting pursuant to its regulatory authority, *see* 12 U.S.C. § 93a, the OCC has issued 12 C.F.R. § 9.7 in an effort to provide clarity to the question of which state's laws are referenced in § 92a(a). The regulation, in relevant part, provides that,

> [f]or each fiduciary relationship, the state referred to in section 92a is the state in which the bank acts in a fiduciary capacity for that relationship. A national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets. If these activities take place in more than one state, then the state in which the bank acts in a fiduciary capacity for section 92a purposes is the state that the bank designates from among those states.

12 C.F.R. § 9.7(d). Thus, under the OCC's interpretation of § 92a, we are directed to consider (1) where ReconTrust accepted the fiduciary appointment at issue here, (2) where it executed the documents that created the fiduciary

<hr>

[6](...continued)
is located.").

relationship, and (3) where it made discretionary decisions regarding the investment or distribution of fiduciary assets.

The district court concluded that all three factors point to Texas, noting that the relevant facts were "uncontested" and that the plaintiffs had "alleged no contrary facts bearing on where the relevant events took place." Aplts.' App. at 147. Because it was undisputed that Texas law would permit the foreclosures at issue, the district court found that the plaintiffs had failed to state any claim on which relief could be granted.

On appeal, the plaintiffs argue that (1) the plain language of 12 U.S.C. § 92a(a) requires that we look to Utah law, not Texas law, in applying the statute; and (2) even if we look beyond the statute's plain language, 12 C.F.R. § 9.7(d) is an unreasonable interpretation of § 92a(a), and we should thus afford it no deference. In an amicus brief, the State of Utah ("State") also makes this latter unreasonable-interpretation argument, and further asserts that even if we were to apply 12 C.F.R. § 9.7(d), it would direct us to apply the law of Utah, not Texas.

We begin with the plaintiffs' first argument—concerning the plain language of § 92a(a)—and conclude that it is unpersuasive. We cannot discern from the plain terms of § 92a(a) what state law is implicated; more specifically, those terms are ambiguous. Accordingly, we turn for guidance to the OCC's interpretive regulation. Furthermore, for the reasons noted below, we adopt for purposes of this case the district court's conclusion that this regulation calls for

30

the application of Texas law.  And we decline to reach the merits of the remainder of the arguments presented by plaintiffs and (as amicus) the State.

**2**

To determine whether ReconTrust was authorized to foreclose on the plaintiffs' properties under 12 U.S.C. § 92a(a), we begin, as always, with the plain language of the statute.  *See, e.g.*, *Woods*, 771 F.3d at 1265 ("We begin our analysis by examining the statute's plain language and if the meaning of that language is clear, our inquiry is at an end."); *United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008) ("We begin by examining the statute's plain language.").  The language at issue here states that the OCC may permit national banks,

> when not in contravention of State or local law, the right to act as trustee . . . or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

12 U.S.C. § 92a(a).[7]  The key question is where is a bank "located" for purposes

---

[7]     The following statutory provision further clarifies that:

> [w]henever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this section.

12 U.S.C. § 92a(b).

31

of the statute; if a national bank complies with the laws of the state in which it is located, then its acts are lawful under § 92a(a). The statute, however, offers no further clarification on where a bank is "located."

In an (unpublished) opinion that we deem persuasive here, a panel of our court has already concluded that the statute's use of the term "located" is ambiguous. *See Garrett v. ReconTrust Co., N.A.*, 546 F. App'x 736, 738–39 (10th Cir. 2013). In *Garrett*, the panel reasoned that "Section 92a provides no direction as to the critical question: in which 'State' is the national bank 'located' where, as here, activities related to the foreclosure sale occur in more than one state?" *Id.* at 738 (citing *Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35, 44 (1977) ("There is no enduring rigidity about the word 'located.'")). We agree with this reasoning: the statute simply does not provide any indication of where a bank is "located" in situations like this one, where a bank operates out of one state but conducts foreclosures in another. Following the *Garrett* decision, we conclude that the plain terms of the statute do not resolve our inquiry; therefore, we cannot stop there.

In resisting this conclusion, the plaintiffs contend that the language of § 92a(a) is "unambiguous and dictates that [ReconTrust is located in] Utah," Aplts.' Opening Br. at 42, relying largely on two key decisions: one from the Utah federal district court, *Bell v. Countrywide Bank*, and the other from the Utah Supreme Court, *Federal National Mortgage Association v. Sundquist*, in which

32

the court noted its agreement with *Bell* that, under the plain terms of § 92a(a), a

national bank like ReconTrust is "located" in "each state in which it carries on

activities as trustee," 311 P.3d at 1009 (quoting *Bell*, 860 F. Supp. 2d at 1300).[8]

---

[8]    The plaintiffs' briefs include this argument as part of their overall *Chevron* step-one argument—*viz.*, as an assertion that the statute unambiguously answers the precise question at issue here and points to Utah law.  *See Chevron*, 467 U.S. at 842 ("First, always, is the question whether Congress has directly spoken to the precise question at issue.").  The defendants maintain that the plaintiffs have waived any such argument—based on *Chevron*—by failing to raise it before the district court prior to their motion for reconsideration.  As discussed in more detail *infra*, we agree with the defendants insofar as they contend that the plaintiffs have waived any reliance on the *Chevron* analytical framework.

Nonetheless, we exercise our discretion to consider the substance of the plaintiffs' specific argument regarding the plain meaning of the statutory terms because they raised essentially the same plain-meaning argument before the district court without relying on the *Chevron* framework.  *Cf. Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013) (noting that "the decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary").  More specifically, the plaintiffs' response to the defendants' motion to dismiss before the district court asserted that the plain language of the statute supports the plaintiffs' position that Utah law is the relevant state law for purposes of § 92a.  *See* Aplts.' App. at 101 (citing *Cox v. ReconTrust Co., N.A.*, No. 2:10-CV-492 CW, 2011 WL 835893, at *6 (D. Utah Mar. 3, 2011) ("Under a straight forward reading of § 92a(b), this court must look to Utah law in its analysis of whether ReconTrust's activities in Utah exceed ReconTrust's trustee powers.")).  Thus, although on appeal the plaintiffs make a plain-meaning argument only in the context of the *Chevron* rubric—and they have waived any reliance on that analytical framework—we exercise our discretion to consider the substance of the plaintiffs' argument here, recognizing that they did advance a plain-meaning argument in their response before the district court.

We do not, however, consider the remaining arguments that plaintiffs now assert as part of their *Chevron* step-one analysis.  While recognizing that we generally "employ[] traditional tools of statutory construction," *Chevron*, 467 U.S. at 843 n.9, at the first stage of the *Chevron* analysis, we limit our present analysis to the plaintiffs' plain-meaning argument because it is the only argument

(continued...)

33

We respectfully disagree with both decisions and find them unpersuasive.

We are constrained to observe that both decisions offer only a conclusory analysis of § 92a(a)'s terms, which does not answer as to ReconTrust "the critical question" of where the national bank is "located." *Garrett*, 546 F. App'x at 738. In *Bell*, the court concluded that "[t]he statute's plain meaning indicates that the national bank is 'located' in each state in which it carries on activities as trustee," and further reasoned that "[w]hen acting as a trustee of a trust deed, one necessarily acts in the capacity as trustee in the State where the real property is located, where notice of default is filed, and where the sale is conducted." 860 F. Supp. 2d at 1300. However, even if we accept *Bell*'s premise that a national bank, when operating as a trustee, is located in the place where it engages in certain trustee activities, there is nothing in the statute that indicates *what* activities are the relevant ones. More specifically, the statute is silent as to whether the activities that *Bell* identifies are the relevant ones. On this barren

---

[8](...continued)
concerning the interpretation of § 92a that the plaintiffs presented to the district court. In particular, we do not consider the plaintiffs' arguments that (1) the "policy of competitive equality" underlying our national banking laws supports their preferred reading of the statute, Aplts.' Opening Br. at 43; and (2) canons of statutory interpretation "reveal congressional intent to apply Utah law" under § 92a(a), *id.* at 47 (capitalization altered). Neither of these two arguments was presented to the district court (and the plaintiffs do not make a plain-error argument as to either on appeal), and we thus decline to entertain them now. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to . . . argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court.").

statutory terrain one might just as well build a case that the relevant activities are the ones that the OCC identifies in 12 U.S.C. § 9.7(d), such as, executing documents that create the fiduciary relationship or making discretionary decisions regarding the distribution of fiduciary assets. The bottom line is that, based on the plain terms of § 92a(a), we just cannot answer the location question.[9]

Relying heavily on *Bell*'s reasoning, the Utah Supreme Court's analysis in *Sundquist* is similarly unpersuasive. The *Sundquist* court explained that

---

[9]  *Bell*'s reasoning is also misguided because the court incorporates an inquiry into legislative history into its ostensible plain-meaning analysis. *See Bell*, 860 F. Supp. 2d at 1299–1300 ("The precise question at issue is this: to which 'State(s)' does 12 U.S.C. § 92a(a) refer? After carefully examining the statute's plain meaning, *together with the legislative history of the statute*, the court has determined that Congress has directly addressed this precise question." (emphasis added)). Ordinarily, legislative history should be referenced only when the statutory language is ambiguous. *See, e.g.*, *Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir. 1986) ("When the meaning of the statute is clear, it is both unnecessary and improper to resort to legislative history to divine congressional intent."); *see also Levorsen v. Octapharma Plasma, Inc.*, 828 F.3d 1227, 1228 (10th Cir. 2016) (noting that sometimes statutes "are so ambiguous that we must comb the annals of legislative history to divine Congress' intent"). In other words, legislative history is not a proper tool in an inquiry aimed at determining whether the terms of a statute speak clearly to the matter at hand.

Though generally following *Bell*'s lead, even the Utah Supreme Court in *Sundquist* did not go so far as to incorporate legislative history into its plain-meaning analysis. However, it nevertheless determined that its plain-meaning "conclusion"—*viz.*, "the plain meaning of the statute is clear" and indicates that "[a] national bank is located in those places where it acts or conducts business"—"[was] bolstered by the legislative history." 311 P.3d at 1010. Under our precedent, given *Sundquist*'s conclusion, ordinarily this latter step is "both unnecessary and improper." *Valdez*, 789 F.2d at 1481.

> The key inquiry under the statute is determining where a national bank is "located." Locate is a commonly used term. Webster's dictionary defines "locate" as "to determine or indicate the place, site, or limits of" something. "*Locate*," Merriam–Webster Online Dictionary, 2013, http://www. merriam-webster.com (last visited July 8, 2013). This suggests that a national bank is located in the place or places where it acts or conducts business.

*Id.* at 1009 (capitalization altered). The court deemed this definition to be consistent with *Bell*. *Id.* (noting its agreement with *Bell* that, under the plain terms of § 92a(a), a national bank like ReconTrust is "located" in "each state in which it carries on activities as trustee" (quoting *Bell*, 860 F. Supp. 2d at 1300)). It wrapped up its analysis succinctly: "In short, the plain meaning of the statute is clear. A national bank is located in those places where it acts or conducts business. And it certainly acts as a trustee in the state in which it liquidates trust assets." *Id.* at 1010. However, even assuming *arguendo* that *Sundquist* is correct in saying that a national bank's location equates to where it "acts or conducts business" the court does not identify in § 92a(a)'s text any basis for concluding *what* acts or indicia of conducting business are the relevant ones. As Utah Supreme Court Justice Lee observed in a thoughtful concurring opinion, the analysis of the *Sundquist* majority involves "question-begging." *Sundquist*, 311 P.3d at 1015 (Lee, J., concurring). In that regard, we deem *Sundquist* to be marching to the beat of the same drummer as *Bell*; both are unpersuasive.

In sum, we reject the plaintiffs' plain-meaning argument. We conclude that § 92a does not on its face make clear where a bank is "located." Thus, we must

36

look beyond the terms of the statute to discern where ReconTrust is "located" for our present purposes.

**3**

Having concluded that the plain language of § 92a(a) does not answer the question of where ReconTrust is located, and having declined to consider the plaintiffs' unpreserved other arguments that the statutory language is unambiguous under *Chevron* step one, *see supra* note 8, we now turn to the OCC's implementing regulation. The regulation, in relevant part, provides that

> [f]or each fiduciary relationship, the state referred to in section 92a is the state in which the bank acts in a fiduciary capacity for that relationship. A national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets. If these activities take place in more than one state, then the state in which the bank acts in a fiduciary capacity for section 92a purposes is the state that the bank designates from among those states.

12 C.F.R. § 9.7(d). Thus, under the OCC's interpretation of § 92a(a), we are directed to consider (1) where ReconTrust accepted the fiduciary appointment at issue here, (2) where it executed the documents that created the fiduciary relationship, and (3) where it made discretionary decisions regarding the investment or distribution of fiduciary assets.

Applying these factors, the district court concluded that all three point to Texas. The court explained that

37

[s]everal documents submitted by Recon are helpful [in applying the § 9.7(d) factors]. The substitution of trustee documents as to these properties were signed by the beneficiary bank in Texas, and Recon lists a Texas address for return mail. Furthermore, the notices of default executed by Recon were signed and notarized in Texas and had Texas return addresses. These facts are uncontested and tend to establish that Recon was making its foreclosure decisions, as well as accepting its appointments, in Texas. Considering the same facts, *Garrett* reached the same conclusion.

In response, Plaintiffs have alleged no contrary facts bearing on where the relevant events took place. Rather, they have placed their faith in fervent repetitions of the conclusion that Recon was acting as a fiduciary in Utah.

Aplts.' App. at 146–47 (footnotes omitted) (discussing *Garrett*, 546 F. App'x at 741–42). Because it is undisputed that Texas law would permit the foreclosures at issue, the district court found that the plaintiffs had failed to state any claim on which relief could be granted.

The plaintiffs raise no attack on appeal to the district court's conclusion that the § 9.7(d) factors ineluctably point to Texas as the operative state. Indeed, they have never presented an argument in this litigation applying the § 9.7(d) factors to these facts—not in their response to the defendants' motion to dismiss, not in their motion to reconsider, and (as noted) not in their appellate briefs.[10]

---

[10] The only even arguable mentions of how the § 9.7(d) factors should be applied to the present facts in these filings are found in (1) the opening brief's argument that the district court erred in dismissing the case with prejudice because the plaintiffs could have submitted additional evidence to show that ReconTrust was located in Utah, and (2) the reply brief's assertion that ReconTrust acted in a fiduciary capacity in Utah. However, in neither instance do

(continued...)

38

Instead, the plaintiffs now attempt to argue on appeal, by reference to the

Supreme Court's *Chevron* decision, that 12 C.F.R. § 9.7(d) is an unreasonable

interpretation of 12 U.S.C. § 92a(a). *See Chevron*, 467 U.S. at 843 & n.11 ("[I]f

the statute is silent or ambiguous with respect to the specific issue, the question

for the court is whether the agency's answer is based on a permissible

construction of the statute."). For the reasons noted below, however, we decline

to reach the merits of this argument.

The plaintiffs have not preserved their *Chevron*-based unreasonableness

argument for review. They acknowledge that they first challenged the

regulation's reasonableness under *Chevron* in a motion to reconsider that they

filed following the grant of the defendants' motion to dismiss. The district court

denied the motion and, in doing so, it declined to reach the merits of this late-

blooming argument. The court expressly recognized that "Plaintiffs did not make

a *Chevron* review argument previously," and it deemed the plaintiffs' conduct

regarding this argument to be impermissible in the reconsideration context—*viz.*,

"an [impermissible] attempt to 'advance arguments that could have been raised in

prior briefing.'" Aplts.' App. at 245 (quoting *Broad. Music, Inc. v. Creation*

---

[10](...continued)
the plaintiffs even cite the regulation, and both arguments are skeletal at best and,
thus, not cognizable here. *See United States v. Cooper*, 654 F.3d 1104, 1128
(10th Cir. 2011) ("It is well-settled that '[a]rguments inadequately briefed in the
opening brief are waived.'" (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d
664, 679 (10th Cir. 1998) (alteration in original))).

*Club, Inc.*, No. 2:06cv504, 2007 WL 752177, at \*1 (D. Utah Mar. 6, 2007)).

We generally decline to consider the merits of arguments that a party raises for the first time in a motion to reconsider, where the district court refrained from reaching the merits of such arguments in denying the motion. *See Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1038–39 (10th Cir. 2009) (declining to reach the merits of appellant's vagueness claim where the district court had declined to do so after it was first raised in a motion to reconsider); *Burnette v. Dresser Indus., Inc.*, 849 F.2d 1277, 1285 (10th Cir. 1988) (same); *cf. Oyler v. Allenbrand*, 23 F.3d 292, 299–300 (10th Cir. 1994) (considering arguments first raised in motion to reconsider only because "the district court considered . . . and ruled on them"). And the plaintiffs have offered us no reason to deviate from this decisional path.[11] We thus decline to consider under the rubric of *Chevron* whether 12 C.F.R. § 9.7(d) is an unreasonable interpretation of 12 U.S.C. § 92a(a).[12]

---

[11]     Apparently in an abundance of caution and as a prophylactic measure, in the event that we "conclude[d] that [a *Chevron* analysis] is required despite [the plaintiffs'] failure to argue *Chevron* in a timely manner," Aplees.' Br. at 36–37, the defendants conducted an extensive *Chevron* analysis. However, the defendants never deviated from their explicit stance that the plaintiffs' *Chevron* "arguments cannot be revived on appeal." *Id.* at 35. Accordingly, we would be hard-pressed to conclude that, by their extensive *Chevron* briefing, the defendants have effectively "waived the [plaintiffs'] waiver." *United States v. Heckenliable*, 446 F.3d 1048, 1049–50 n.3 (10th Cir. 2006); *accord United States v. McGehee*, 672 F.3d 860, 873 n.5 (10th Cir. 2012). In any event, the plaintiffs have made no such argument.

[12]     The plaintiffs also appear to contend that courts are required to conduct a *Chevron* analysis of whether a regulation is a reasonable interpretation

(continued...)

Notably, in its amicus brief, the State has sought to fill the lucuna left by the plaintiffs regarding the application of the § 9.7(d) factors. Specifically, it argues that, when those factors are applied to these facts, the correct conclusion is that ReconTrust is located in Utah. We, however, eschew in this case reaching the merits of this argument. As noted, the plaintiffs (i.e., the parties opposing ReconTrust's position) have nowhere presented an argument applying the § 9.7(d) factors to the facts of this case. While we appreciate the State's thoughtful

---

[12](...continued)
of a statute it construes in any case implicating an interpretive agency regulation—even where the parties never contested the reasonableness of the regulation's interpretation. This stance is misguided. *Cf. Garrett*, 546 F. App'x at 739 n.1 (declining to consider argument that 12 C.F.R. § 9.7(d) is an unreasonable interpretation of 12 U.S.C. § 92a(a) where plaintiff failed to raise argument before the district court). Indeed, both the majority and the dissent in a recent decision intimated that ordinarily we should receive an "invitation" to employ the *Chevron* rubric, *Transam Trucking, Inc. v. Admin. Review Bd., U.S. Dep't of Labor*, 833 F.3d 1206, 1212 n.4 (10th Cir. 2016), lest we "make a wholly uninvited foray into step two of *Chevron*land," *id.* at 1216 (Gorsuch, J., dissenting). Moreover, the plaintiffs' briefing on this point, which relies primarily on the Supreme Court's decision in *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005), misses the mark. Their brief points to the Court's statement in *Brand X* that, in reviewing a Federal Communications Commission regulation, the Ninth Circuit had "erred in refusing to apply *Chevron*." 545 U.S. at 984. However, in *Brand X*, a number of the involved parties had pursued a *Chevron*-based argument from the outset. Here, in contrast, the plaintiffs simply did not raise in a timely fashion any argument challenging the reasonableness of the OCC's regulation (i.e., § 9.7(d)); they were silent on this point in response to the defendants' motion to dismiss. In sum, the plaintiffs have provided no authority for their assertion that courts—including the district court here—are required to *sua sponte* undertake a *Chevron* reasonableness analysis any time an agency interpretive regulation is implicated in a decision, and the legal touchstones that we have uncovered indicate that this argument is misguided.

41

attempt to do so, we must "keep our primary focus on the parties' arguments." *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178–79 n.4 (10th Cir. 2012); *see United States v. Ackerman*, 831 F.3d 1292, 1299 (10th Cir. 2016) ("[O]urs is a party-directed adversarial system and we normally limit ourselves to the arguments the parties before us choose to present. Amici briefs often serve valuable functions, but those functions don't include presenting arguments forgone by the parties themselves . . . . [T]his court has routinely declined to consider arguments presented only in an amicus brief . . . ."). We do not discern any "exceptional circumstances" here that would cause us to exercise our discretion to stray from the parties' properly-preserved arguments, and the State has not identified any. *See Tyler v. City of Manhattan*, 118 F.3d 1400, 1404 (10th Cir. 1997) ("Although this circuit has yet to address the issue, it is clear that this panel has the discretion to reach arguments raised only in an amicus curiae brief. It is equally clear, however, that we should exercise that discretion *only in exceptional circumstances*." (emphasis added) (citation omitted)); *see Ackerman*, 831 F.3d at 1299 (in following this court's approach of ordinarily declining to consider arguments made only in an amicus brief, observing that "no one even attempts to offer us a reason to depart from that practice here"). Accordingly, we deem it prudent and appropriate to decline to reach the State's contention (as amicus) that application of the § 9.7(d) factors supports the conclusion that

42

ReconTrust is located in Utah. We leave this argument for another day.[13]

In sum, we reject the plaintiffs' argument that the plain text of 12 U.S.C. § 92a(a) requires us to find that ReconTrust is located in Utah for purposes of the statute. Instead, we conclude that the statute is ambiguous on this point. Because the plaintiffs have failed to properly preserve any argument that 12 C.F.R. § 9.7(d) is an unreasonable interpretation of the statute, as well as any argument that the § 9.7(d) factors point to Utah rather than Texas, we decline to consider these points in the present case. We accordingly adopt for purposes of this action the district court's conclusion—left without a properly preserved challenge—that application of the § 9.7(d) factors indicates that ReconTrust was located in Texas.[14] Because it is undisputed that Texas law would permit the foreclosures at

---

[13]     Like the plaintiffs, the State also made a *Chevron*-based unreasonableness argument, asking us to conclude that "the OCC Rule is not entitled to deference." Amicus State's Br. at 5. Because we have determined that this argument—as advanced by a party to this action (i.e., the plaintiffs)—is not preserved for review, we decline to resuscitate it simply because amicus State wishes to ride the same horse; their arguments cannot serve to "illuminate the contours" of plaintiffs' waived argument. *See Rosenfield*, 681 F.3d at 1178–79 n.4.

[14]     Because we uphold the district court's conclusion that ReconTrust was located, for purposes of 12 U.S.C. § 92a(a), in Texas, and it is undisputed that under Texas law ReconTrust possessed the power of sale as the trustee, we need not reach the alternative argument advanced by the defendants that ReconTrust would still have the power of sale under § 92a even if the state where it was located under the statute was Utah. More specifically, section 92a(b) gives the power to act as trustee to national banks whenever state law grants the powers to "State banks, trust companies, or other corporations which compete with national banks." Utah law gives the power of sale to title insurance companies,

(continued...)

43

issue, we conclude that the district court correctly ruled that the plaintiffs had failed to state any claim on which relief could be granted.

## III

For the foregoing reasons, we **AFFIRM** the district court's judgment.

---

[14](...continued)
*see* Utah Code §§ 57-1-21(3), 57-1-23, and the defendants have argued that title insurance companies are "other corporations which compete with national banks" thus triggering the grant of power to national banks under § 92a(b), Aplees.' Br. at 52. We need not and do not reach this argument in this case. Furthermore, following oral argument, we issued an order directing the parties to submit letters under Federal Rule of Appellate Procedure 28(j), "addressing the question of whether, *under Utah law*, it is permissible for a lending bank to designate a wholly-owned subsidiary title company as a trustee in a non-judicial foreclosure." Order, No. 14-4085, at 1 (10th Cir., filed May 7, 2015) (emphasis added). The parties and the State responded. However, because we have concluded that, under 12 U.S.C. § 92a(a)—as interpreted in 12 C.F.R. § 9.7(d)—Texas supplies the operative law, we need not (and do not) pursue this line of inquiry regarding the requirements of *Utah* law.

14-4085, <u>Dutcher v. Matheson</u>

**LUCERO**, J., concurring.

I agree with my colleagues in the majority that the district court properly decided it had jurisdiction under the Class Action Fairness Act. And I reluctantly concur with my colleagues on the merits, solely on the basis of waiver. I write separately to express my view that 12 C.F.R. § 9.7(d) should not be entitled to deference.

By statute, national banks may act as trustees in the same manner that state banks "are permitted to act under the laws of the State in which the national bank is located." 12 U.S.C. § 92a(a). The Office of the Comptroller of the Currency ("OCC") has concluded that a national bank is located in "the state in which the bank acts in a fiduciary capacity" as to each of its fiduciary relationships. § 9.7(d). In this case, ReconTrust Company, N.A. ("Recon"), a national bank, acted in a fiduciary capacity in Utah by engaging in a non-judicial foreclosure in the state. Therefore, Recon should have been subject to Utah law regarding such foreclosures. But the OCC has unreasonably concluded that a national bank "acts in a fiduciary capacity" only "in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets." <u>Id.</u> Because Recon conducted these three activities in Texas, the regulation permits it to transpose Texas law for Utah law with respect to a foreclosure sale in Utah and thereby obtain a material competitive advantage over Utah state banks. Such a serious degradation of state sovereignty ought not to be the result of a patently unreasonable regulatory decision.

# I

As the majority opinion correctly notes, the plaintiffs properly preserved only a single argument regarding § 92a(a): the plain language of the statute compels the conclusion that Recon was "located" in Utah when it engaged in the non-judicial foreclosures at issue. (Majority Op. 35 n.9.) But the Supreme Court has previously described the word "located" as a "chameleon" whose "meaning depends on the context in and purpose for which it is used." Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 318 (2006); see also Garrett v. ReconTrust Co., N.A., 546 F. App'x 736, 738-39 (10th Cir. 2013) (unpublished) (rejecting argument that the plain text of § 92a(a) is clear). I will not repeat here the majority's thorough consideration of the plain text. (Majority Op. 35-39.) I simply note my agreement that § 92a(a) does not tell us the state in which Recon was located.

# II

Although I concur with the majority that the plaintiffs' plain text contention fails, the arguments the plaintiffs attempt to raise for the first time on appeal carry some force. The OCC defines a bank's location as the state in which it "acts in a fiduciary capacity." § 9.7(d). This portion of the regulation is well-founded. Section 92a itself gives the OCC authority to grant national banks the power to "act as trustee." § 92a(a). And the essence of acting as a trustee is acting in a fiduciary capacity. But the OCC has limited the locations in which a bank "acts in a fiduciary capacity" to only three: where the bank "accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution

of fiduciary assets." § 9.7(d). I would hold that this limitation is unreasonable, joining at least two courts that have declined to grant § 9.7(d) deference. <u>See</u> <u>Bell v. Countrywide Bank, N.A.</u>, 860 F. Supp. 2d 1290, 1298-1308 (D. Utah 2012); <u>Fed. Nat'l Mortg. Ass'n v. Sundquist</u>, 311 P.3d 1004, 1009-13 (Utah 2013).

Nothing in the statute compels the OCC's conclusion that a bank's location is so limited. <u>See</u> <u>Sundquist</u>, 311 P.3d at 1013 ("[T]here is nothing in the statute itself that ascribes any particular significance of these three particular acts, while rendering other acts undertaken by the bank irrelevant."). In drafting § 9.7(d), the OCC apparently attempted to identify "key fiduciary functions." Fiduciary Activities of National Banks, 65 Fed. Reg. 75,872, 75,874 (Dec. 5, 2000). Yet the agency "failed to include as a core fiduciary function engaging in an act which liquidates the trust assets, e.g., engaging in a non-judicial foreclosure of real property where the trust asset is located. This makes no sense." <u>Bell</u>, 860 F. Supp. 2d at 1300.

In promulgating § 9.7(d), the OCC likely had in mind traditional express trusts rather than trust deeds. But the "similarities between a trustee of an express trust and a trustee under a deed of trust end with the name." <u>Monterey S. P. P'ship v. W. L. Bangham</u>, 777 P.2d 623, 628 (Cal. 1989). In the deed of trust context, a non-judicial foreclosure sale is not an ancillary act; it is the core responsibility undertaken by the trustee. <u>See</u> <u>Russell v. Lundberg</u>, 120 P.3d 541, 545 (Utah Ct. App. 2005) ("A trustee's primary obligation is to assure the payment of the debt secured by the trust deed."). Whether because of an oversight or confusion regarding the differences between express trusts and trust deeds, the OCC's decision to omit non-judicial foreclosures from its list

3

of a trustee's key fiduciary duties cannot be countenanced. It seems nonsensical to exclude from this list a trustee's liquidation of trust assets—a trustee's principal duty under a deed of trust.

In addition to arbitrarily limiting the circumstances in which a national bank will be deemed to have acted in a fiduciary capacity, the OCC's interpretation suffers from two other shortcomings. First, the interpretation cuts against a central policy of the statute: ensuring competitive equality between state and national banks. A national bank can choose to perform at least some of the listed activities from any location. See § 9.7(d) (listing the state in which a bank accepts its appointment and executes trust documents). And the regulation provides that if the listed activities "take place in more than one state, then the state in which the bank acts in a fiduciary capacity for section 92a purposes is the state that the bank designates from among those states." Id. This regulation permits national banks to "dictate the applicable law." Sundquist, 311 P.3d at 1013. Put another way, the OCC's regulation creates a race to the bottom in which national banks can choose to be governed by the state with the most bank-friendly rules simply by assuming the delineated fiduciary responsibilities there. National banks can then act according to those rules in every state.

By allowing national banks to select which state's law it will follow regardless of the state in which it acts, § 9.7(d) grants them a material competitive advantage over state banks, which may not so choose. This result undermines the principle of "competitive equality" that Congress "firmly embedded in the statutes governing the national banking system." First Nat'l Bank in Plant City v. Dickinson, 396 U.S. 122, 133 (1969); see also

4

St. Louis Cty. Nat'l Bank v. Mercantile Tr. Co. Nat'l Ass'n, 548 F.2d 716, 720 (8th Cir. 1976) ("The policy of competitive equality was incorporated into section 92a."); Blaney v. Fla. Nat'l Bank at Orlando, 357 F.2d 27, 30 (5th Cir. 1966) ("[N]ational banks [should be] on an equal competitive basis with state banks and trust companies in the state where the national bank is situated."); Bell, 860 F. Supp. 2d. at 1303 (analyzing the legislative history of § 92a(a) and concluding that "Congress thus intended to create an equal playing field for national banks").  Section 9.7(d) contravenes the statute's overriding purpose.  It grants Recon, a national bank based in Texas, a substantial competitive advantage over Utah-chartered banks, as well as national banks based in Utah.  Under Utah law, the latter two types of banks cannot exercise the power of sale in non-judicial foreclosures in Utah, whereas an out-of-state national bank like Recon can.  This consequence turns the principle of competitive equity on its head.[1]

---

[1] Although the current regulation is unreasonable, the OCC has previously set forth a permissible interpretation of § 92a(a).  The OCC previously advised that

> the effect of section 92a is that in any specific state, the availability of fiduciary powers is the same for out-of-state national banks or for in-state national banks and is dependent upon what the state permits for its own state institutions. . . . Therefore, a national bank with its main office in one state . . . may conduct fiduciary business in that state and other states, depending upon—with respect to each state—whether each state allows its own institutions to engage in fiduciary business.

Office of the Comptroller of the Currency, Authority of a National Bank to Conduct Fiduciary Activities Nationwide Through Trust Offices in Various States, Interpretive Letter No. 695, 1996 WL 187825, at *4 (Dec. 8, 1995) (emphasis added).  This reading of the statute provided a "level playing field" between state-chartered banks, in-state national banks, and out-of-state national banks.  Id. at *14.  Two later interpretative

5

The OCC's regulation should also not be granted deference because it intrudes into a realm of traditional state authority. As the Utah Supreme Court explained in Sundquist, courts should not lightly assume a congressional purpose to dominate "a field of traditional state sovereignty." 311 P.3d at 1010. Because "the security of the titles to real estate and the power to ensure that security inheres in the very nature of state government," we should require "a clear statement of an intent to permit the laws of a foreign state to regulate the manner and mode of a foreclosure sale in another state." Id. at 1012 (quotation and alteration omitted).[2]

I would not construe the ambiguity in the term "located" as a delegation of authority to a federal agency to decide that Texas law applies to Utah foreclosures. The legislative history of the statute counsels strongly against such a conclusion. In a Senate Report accompanying the National Banking Act of 1962, the Senate Committee on Banking and Currency stated that "this bill will result in no change in the present distribution of power between Federal and State Governments." Bell, 860 F. Supp. 2d at 1303 (quoting S. Rep. No. 87-2039 (1962), as reprinted in 1962 U.S.C.C.A.N. 2736).

---

letters from the OCC, however, reversed this position. See Fiduciary Activities of National Banks, 66 Fed. Reg. 34,792, 34,795 (July 2, 2001) (describing interpretive letters rejecting the prior view).

[2] Some have taken this argument one step further, asserting that "when an agency purports to decide the scope of federal pre-emption, a healthy respect for state sovereignty calls for something less than Chevron deference." Watters v. Wachovia Bank, N.A., 550 U.S. 1, 41 (2007) (Stevens, J., dissenting). "Unlike Congress, administrative agencies are clearly not designed to represent the interests of States, yet with relative ease they can promulgate comprehensive and detailed regulations that have broad pre-emption ramifications for state law." Geier v. Am. Honda Motor Co., 529 U.S. 861, 908 (2000) (Stevens, J., dissenting).

6

Yet § 9.7(d) greatly upsets states' traditional authority over real property located within their borders.

III

Unfortunately, the plaintiffs in this case have waived any arguments regarding Chevron or the interpretive canons noted above.[3] (See Majority Op. 41-43.) In the absence of such a waiver, however, I would hold for the above reasons that § 9.7(d) is an unreasonable interpretation of § 92a(a) and thus unworthy of deference. Under a more logical construction of the statute, the applicable law would be that of the state where a trustee exercises its power of sale. As the court in Bell explained, "[w]hen acting as a trustee of a trust deed, one necessarily acts in the capacity as a trustee in the State where the real property is located, where notice of default is filed, and where the sale is conducted." 860 F. Supp. 2d at 1300. And because Utah law grants the authority to conduct non-judicial foreclosures only to members of the Utah State Bar or title insurance companies with an office in Utah, Utah Code § 57-1-21(3), I would conclude

---

[3] I admit to some confusion as to precisely where in the Chevron framework the foregoing analysis fits. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). Certain of my colleagues have noted that the Supreme Court has been inconsistent in describing "just how rigorous Chevron step one is supposed to be." Gutierrez-Brizuela v. Lynch, ___ F.3d ___, 2016 WL 4436309, at *11 (10th Cir. Aug. 23, 2016) (Gorsuch, J., concurring). Our circuit precedent indicates that "courts may use statutory language and legislative history at the first step of the Chevron analysis." Ron Peterson Firearms, LLC v. Jones, 760 F.3d 1147, 1157 n.10 (10th Cir. 2014). But this instruction seems to stand in some tension with the rule that "we do not resort to legislative history to cloud a statutory text that is clear." Ratzlaf v. United States, 510 U.S. 135, 147-48 (1994). Regardless of whether the foregoing is properly considered a Chevron step one or step two argument, it was not preserved below.

7

that Recon does not have the power to conduct non-judicial foreclosures of trust deeds in

Utah.

No. 14-4085, *Dutcher v. Matheson*

**HOLMES**, Circuit Judge, concurring.

I write separately to offer some clarifying remarks regarding the not infrequent use of the term "preemption" (or derivatives thereof) in the context of 12 U.S.C. § 92a(a). Specifically, I hope to underscore that—insofar as one can rightly call § 92a(a)'s effect on state law "preemption"—it is *not* ordinary conflict preemption.

Rooting this conceptual observation in the soil of this case, I observe that the defendants in their briefing occasionally suggest that this dispute involves a question of conflict preemption. *See* Aplees.' Br. at 30 n.12 ("This case pertains to preemption of that portion of the Utah statute which conflicts with § 92a."); *id.* at 28 (contending that the plaintiffs' argument that Utah law applies in the present circumstances is "fundamentally flawed because ReconTrust, a national bank, was authorized to conduct the sales by *federal* law, and any Utah law purporting to deny that authority must give way"). However, though there is arguably a limited and unique form of preemption at issue here, it is not typical conflict preemption. The doctrine of conflict preemption is well-established: "In that species of preemption, a state-law provision will be preempted if it conflicts with federal law." *United States v. Sup. Ct. of N.M.*, --- F.3d ----, 2016 WL 5946021, at *22 (10th Cir. June 7, 2016); *see* Richard H. Fallon, Jr., et al., Hart and Wechsler's The Federal Courts and The Federal System 646 (6th ed. 2009) ("Conflict preemption . . . embraces two distinct situations. In the easier but far rarer case,

compliance with both federal and state duties is simply impossible. In the second and more common situation, compliance with both laws is possible, yet state law poses an obstacle to the achievement of federal purposes." (citation omitted)).

As the plaintiffs recognize, however, this case does not involve "typical" conflict preemption, Aplts.' Reply Br. at 3, where federal law—especially in the context of national banks—entirely supplants and renders inoperative conflicting state-law provisions. *See Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 32 (1996) (stating that the "history is one of interpreting grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law"); *id.* at 33 ("In defining the pre-emptive scope of statutes and regulations granting a power to national banks, these cases take the view that normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted."); *see also Hughes v. Talen Energy Mktg., LLC*, --- U.S. ----, 136 S. Ct. 1288, 1297 (2016) ("Put simply, federal law preempts contrary state law."). In other words, the inquiry in the classic conflict-preemption scenario focuses on whether federal law conflicts with state law such that the force of the latter is nullified; if so, purely federal law will control the contested terrain. That is not so in this setting pertaining to the fiduciary powers of national banks. More specifically, a role for state law is expressly built into the federal regulatory scheme: that is, the federal banking provision at issue,

§ 92a(a), explicitly provides that "the exercise of [federal banking] power is subject to state law." *Barnett Bank*, 517 U.S. at 34. Consequently, state law is never entirely out of the equation in this setting. The bone of contention between the parties simply relates to the identification of *which* state's law—as between the two competing states, Utah and Texas—conditions the exercise of the federal banking power that § 92a(a) confers.

Yet, it could be argued that the outcome of this state-law competition does give rise, in a very limited sense, to a unique form of preemption, in that the law of a state—the loser in the competition—is displaced *through force of federal law* and rendered null. Of course, because state law is built into the federal scheme, the law of the loser state in the competition is replaced by the law of *another state* (i.e., the winner). So, it is not classic conflict preemption, as discussed above. However, the term "preemption" (as well as derivatives thereof) has been used in this *very limited sense* by some courts in describing the effect of § 92a(a) on the (losing) state's law. *See Bell v. Countrywide Bank, N.A.*, 860 F. Supp. 2d 1290, 1302 (D. Utah 2012) ("A contrary interpretation [of allegedly relevant legislative history of § 92a] . . . *effectively preempts* the laws of the local State (presumably the State where the foreclosed property is located and the trustee executes the power of sale) *in favor of the laws of another State* (the State where the national bank performs its 'core fiduciary functions') . . . ." (emphases added)); *Fed. Nat'l Mortg. Ass'n v. Sundquist*, 311 P.3d 1004, 1008 (Utah 2013)

("The issue of whether the NBA preempts Utah law governing the qualification of trustees has been addressed by the Utah federal district courts, with differing results. In three cases, the federal district courts have found that federal law preempts Utah law and have therefore concluded that *the laws of Texas apply*." (emphasis added)); *id.* at 1007 ("Section 92a of the National Banking Act Does Not Preempt Sections 57-1-21 and 57-1-23 of the Utah Code . . . ." (capitalization altered)); *see also Dutcher I*, 733 F.3d at 986 (observing that "the district court held that federal law preempted state law"). The parties likewise have primarily used the term "preempts" or "preemption" in this narrow sense: *viz.*, they use the term relative to the inquiry into whether Utah law is displaced by Texas law through the force of federal law—namely, by § 92a(a). Not surprisingly, the parties adopt opposite views on this unique preemption question. *Compare* Aplees.' Br. at 2 (framing the issue as "Did the District Court correctly hold that 12 U.S.C. § 92a(a) authorizes ReconTrust, a national bank, [under Texas law] to exercise the power of sale in Utah and preempts those provisions of a Utah statute which purport to deny ReconTrust that authority?"), *and* 49 (resolving the issue by noting that "Texas law does not prohibit ReconTrust from exercising the power of sale in Utah," and thus "ReconTrust's exercise of the power of sale with respect to Plaintiffs' properties was permissible under *federal law*" (underlining omitted and emphasis added)), *with* Aplts.' Reply Br. at 3 ("Appellees have it exactly backward: § 92a expressly *allows Utah law* to limit the fiduciary powers

-4-

of national banks as long as it applies the same limits to state institutions."
(emphasis added)); *id.* at 2 ("Where does Utah law conflict with federal law and
what federal law preempts Utah's nonjudicial foreclosure regime?  Appellees
gloss over this issue."); *see also* Aplts.' Opening Br. at 38 ("Appellees moved for
dismissal based on preemption.  But there is no federal law that supplants Utah's
non-judicial foreclosure law.").  For clarity's sake, however, it is worth
highlighting that at issue in the parties' arguments is *not* typical conflict
preemption.